THE GLADSTONE EXCHANGE BANK v. PATRICK W. KEAT-
ING AND THOMAS P. SHEEHAN.

*Banks and banking—Overdrafts—Unauthorized payment—Partner-
ship—Limitation upon authority of members.*

1. Either member of a copartnership has the power to protect him-
self by stipulating that the other member shall not have author-
ity to bind the firm by signing checks, if notice is given to
the bank which is the depository of the firm.

2. Where, in a suit by a bank against copartners to recover for
overdrafts paid on the defendants' checks, it appears from the
plaintiff's own testimony that it had been instructed by the
defendants to pay no checks not countersigned by their book-
keeper, and that the checks in suit were not so countersigned,
the plaintiff, in order to recover, must show that the firm received
the benefit of the money so paid, and it has the burden of mak-
ing such showing.

3. In a suit by a bank to recover for overdrafts paid on the defend-
ants' checks in violation of their instructions to the bank, the
defendants are not estopped from relying upon such fact as a
defense on the ground that it was their duty to examine the
checks when returned to them, and notify the bank of its vio-
lation of said instructions.

4. Testimony objected to as "incompetent" is properly admitted if
competent for any purpose.

5. One partner drew his individual check, payable to the order of
the bookkeeper of the firm, for the firm. The bookkeeper
indorsed the check, and deposited it to the credit of the firm
in the bank where it kept its account. The check, not being
paid, was charged back in the firm account. And it is held
that recovery can be had on the check in a suit brought by
the bank against the firm to recover for overdrafts paid on
the firm checks, it having been sent as a firm asset, and received
and deposited as such to the knowledge of the drawer; citing
*Bank v. Morgan*, 117 U. S. 96.

Error to Wayne. (Reilly, J.) Argued November 4, 1892.
Decided December 24, 1892.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion of GRANT, J.

*Brennan, Donnelly & Van DeMark,* for appellants.

*Wells, Angell, Boynton & McMillan,* for plaintiff.

MONTGOMERY, J. I think the judgment in this case should be reversed.

It appears that the two defendants joined in a letter to the plaintiff, instructing it to pay no checks on the part of defendants unless they were countersigned by Robert C. Sheehan, son of the defendant Sheehan, and the book-keeper of the firm. Notwithstanding this direction, the plaintiff paid 22 checks, for the amount of which defendants deny liability. There was no showing by the plaintiff that the defendants derived any benefit from the moneys received upon these checks. It rests its claim of liability upon the contract implied from the signing of the checks in the firm name.

It is suggested that the burden of proof would rest upon the defendants to show that the moneys did not go to the benefit of the firm. In my judgment, this is not the correct rule in such a case. The plaintiff seeks to recover, notwithstanding it appears affirmatively that the money was paid out by it upon checks which were drawn without the requisite authority of the firm. There can be no doubt about the power of either member of a copartnership to protect himself by stipulating that the other member shall not have the authority to bind the firm by signing checks, if notice is given to the bank which is the depository of the firm; and when, on the affirmative showing of the bank, as in this case, it appears that the bank has disregarded the notice, how can it be said that a *prima facie* case is shown, without further showing that some benefit

was derived by the firm from the payment of the money?

It is also suggested that the defendants are estopped from relying upon this defense, for the reason that there was an opportunity for an examination of the account and checks, and that the defendants should have examined these checks, and notified the plaintiff of the excess of authority and of the invalidity of the checks; and the case of *Bank v. Morgan*, 117 U. S. 96, is cited to sustain this position. But in the case cited the party drawing the check had *prima facie* authority to draw it; the bank acted in good faith in making the payment; the check passed back into the hands of the drawer, with opportunity to examine and observe the error; it appeared charged in the account of the drawer. Under these circumstances, it was held that there was a duty to notify the bank, in order that it might protect itself. But what notice was requisite in this case to enable the bank to protect itself? The moment it paid one of these checks its officers knew from direct notification that they were violating the express instructions and directions of defendants. Why notify them of what they already knew? If either party was entitled to notice of this transaction from the other, it was certainly the two defendants, as individuals, who were entitled to notice from the bank that some person connected with the firm was assuming to violate the express instructions of the firm, of which the bank as well as the defendants was apprised.

As to the other questions discussed, I agree with Mr. Justice GRANT.

McGRATH, C. J., LONG and DURAND, JJ., concurred with MONTGOMERY, J.

GRANT, J. The defendants were partners, and took a contract for the construction of a system of water-works for the village of Gladstone. Keating was the managing

partner, while Sheehan resided in Wayne county, and was engaged in other business for the firm elsewhere. Keating went to the bank, and stated that, as they were doing business elsewhere, he desired to run the business at Gladstone without paying any capital into it. Plaintiff agreed with him to advance money on the firm checks, upon security of the checks of the city treasurer as the work advanced, charging interest for advances. An account was opened with the plaintiff, the first deposit being made June 1, 1889, and the last July 29 of the same year. Plaintiff brought suit to recover for overdrafts, claimed to amount to $1,140.27, for which it recovered verdict and judgment.

1. On July 2 the defendants took to the bank a city check for $809.55. This was entered upon the books of the bank at the time as a deposit. Plaintiff gave evidence tending to show that this check was not put into the bank as a deposit, but that it paid the money thereon at the time of presentation for the purpose of paying defendants' employés, and that its entry on the books as a deposit was a mistake. This is denied by the defendants, who claim that at the time of depositing this check they issued their own check, and drew thereon the money to pay their men.

2. On June 15 defendant Sheehan issued his check for $500, payable to the order of R. C. Sheehan, who was the clerk for defendants at Gladstone, and which was signed, " T. P. Sheehan, for Keating & Sheehan." This check was drawn upon the Peninsular Savings Bank of Detroit, was indorsed by R. C. Sheehan, and was deposited in plaintiff's bank to the credit of Keating & Sheehan. Defendant Sheehan did not have funds in the bank to meet the check, and upon non-payment it was charged back by the bank to the defendants in their account.

3. Defendants gave evidence tending to show that about

June 4, 1889, they signed and delivered a letter to the plaintiff, instructing it to pay no checks on account of the defendants unless they were countersigned by Robert C. Sheehan, son of the defendant Sheehan, the bookkeeper of the firm. Twenty-two checks were paid by the plaintiff, signed, "Keating & Sheehan," without the indorsement of R. C. Sheehan, the clerk. Other checks were also paid, which were not countersigned by the clerk, but which were admitted to have been used in the partnership business. Of the disputed checks some were payable to the order of bearer, and others to the order of individuals. These checks had all been surrendered to the defendants, and were produced by defendant Sheehan upon the trial. The purpose of this instruction does not appear. The letter was signed by each of the partners, and there is no means of determining whether this was for convenience in book-keeping or for the protection of defendant Sheehan. There is nothing in the record to indicate that these checks were not drawn and used for the benefit of the firm.

The main controversies in the case arise upon these three points.

I. The only error assigned in regard to the check for $809.55 is that the court erred in admitting in evidence deposit checks for other deposits made by the defendants; it appearing that, contrary to the usual custom, no deposit check was made for this item. The record shows that they were objected to as incompetent. They were competent as part of the plaintiff's case, to show the amount received from the defendants. Whether counsel for plaintiff made an improper use of them in his argument to the jury does not appear. If competent for any purpose, they were properly admitted. But it is not entirely clear that they were not competent evidence bearing upon the disputed question in regard to this city check.

94 MICH.—28.

II. Defendant Sheehan alone defends in this case, the defendant Keating not having appeared, and not having been produced as a witness. It is now insisted on behalf of Sheehan that the check for $500, which he sent as a part of the partnership assets, can form no basis for a recovery against the firm; that Keating & Sheehan did not hold to this check the relation either as makers, indorsers, or guarantors; and that therefore plaintiff had no right to charge it back against the firm when not paid. The check itself showed that it was for the benefit of the firm. It was sent as a firm asset, was received by Keating, and deposited as such to the credit of the firm, and this was known to Sheehan. He has ratified the transaction, the correctness of which he cannot now question. *Bank v. Morgan*, 117 U. S. 96. Furthermore, the correctness of this charge was not questioned in the court below, and cannot be raised here for the first time.

III. It is unnecessary to determine, under the facts in this case, whether the plaintiff was justified in cashing checks signed by the firm, but not countersigned by their bookkeeper. Two considerations are, in my judgment, conclusive against this defense. Defendant Sheehan testified that he learned on August 4 that checks were being cashed which were not countersigned by the bookkeeper; that he then wrote the bank to cash no more checks unless so countersigned, and none so drawn were afterwards paid. It is apparent that he obtained this information either by a letter from the bookkeeper or from the pass-book and checks which had been returned by the bank to the firm. He went to Gladstone August 15, and then certainly the pass-book and checks were subject to his inspection. About this time difficulty evidently arose between the defendants, but what it was does not appear. It was then the duty of defendant Sheehan to examine the account and checks, and

notify the plaintiff if these checks were issued without authority, and not for firm purposes, in order that it might promptly pursue such remedy as it was entitled to against the party or parties responsible.    The circuit judge so instructed the jury.    This instruction was correct.    *Bank v. Morgan,* 117 U. S. 96.    In that case the checks had been forged by raising the amounts.    The pass-book and checks were returned in the due course of business to Morgan, who did not examine them, but trusted his clerk, who committed the forgery.    It was held that after a reasonable time to inspect the account, and a failure to do so, and to inform the bank of the forgeries, he could not dispute its correctness.    It was there said:

" While it is true that the relation of a bank and its depositor is one simply of debtor and creditor, and that the depositor is not chargeable with any payments except such as are made in conformity with his orders, it is within common knowledge that the object of a pass-book is to inform the depositor from time to time of the condition of his account as it appears upon the books of the bank.    It not only enables him to discover errors to his prejudice, but supplies evidence in his favor in the event of litigation or dispute with the bank.    In this way it operates to protect him against the carelessness or fraud of the bank.    The sending of this pass-book to be written up and returned with the vouchers is therefore, in effect, a demand to know what the bank claims to be the state of his account.    And the return of the book with the vouchers is the answer to that demand, and, in effect, imports a request by the bank that the depositor will, in proper time, examine the account so rendered, and either sanction or repudiate it."

The authorities on this subject are there collated and discussed in a long and able opinion.    Of course, errors and mistakes are at any time subject to correction as between the bank and its depositors; but where checks issued, though without authority, are paid by the bank, and returned to the depositor, he must seasonably object and notify the bank.    This rule is founded in good sense and

fair dealing.  In the present case the checks were signed by the parties authorized to sign them, and were returned to the defendants.  Neither of them made any protest after they received them.  Defendant Sheehan was upon the ground, and remained there and in the vicinity for several months afterwards, and took no steps to inform the bank.  If he had been defrauded by his partner, of which there is no evidence, and these checks were not given and the money obtained thereon used for the benefit of the firm, he could easily have ascertained that fact, for they were all made payable to the order of the payee; 12 being payable to payees therein named, and the others payable to the order of bearer.  It does not appear that he made any objection to their validity until this suit was brought.  He testified that the bank book was twice written up, and each time showed a balance in his favor; but this does not affect the question of his duty to examine the checks, and notify plaintiff if he claimed that they were improperly paid.

The burden of proof, under the circumstances of this case, even if the above defense were open to defendants, was upon them to show that the checks were not used for the benefit of the firm.  Defendant Sheehan admits that some of these checks were drawn and used for partnership purposes, and specifies two,—one issued to one Hammer, the other to one Jackson.  He does not know but that all were so used.  One of the disputed checks specifies that it was for labor.  Presumably Mr. Keating was honest, and made a proper use of the funds. The evidence was peculiarly within the knowledge of the defendants.  They had the checks with the payees' names indorsed thereon.  They did not produce their books of account, nor make any effort whatever to show that the money was not honestly used.  The checks were for small amounts, were such as would naturally be issued in the prosecution of business, and were properly signed.

Under such circumstances, the law does not cast the burden of proof upon a banker to show that the funds obtained were properly used.

Judgment should be affirmed.