## D. K. HARNESS v. McKEE-BROWN LUMBER COMPANY.

(Filed February 13, 1907.)

1. EXCEPTIONS—Instructions—Appeal. Before this court will review the correctness of instructions given by the trial court, the record must affirmatively show an exception to the giving of such instructions at the time they were given.

2. APPEAL—Verdict not Disturbed, When. Where a disputed question of fact is submitted to the jury in the trial court, under proper instructions the finding of the jury on such question of fact and the judgment of the court thereon, will not be disturbed by this court where the record shows evidence reasonably tending to support such finding.

3. EVIDENCE—Subcontractors Lien. A promise on the part of an owner to pay the amount of the subcontractor's claim is supported by an agreement by the subcontractor not to file a lien.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before*
*B. F. Burwell, Trial Judge.*

*M. Fulton,* for plaintiff in error.

*Crockett & Johnson* for defendant in error.

Opinion of the court by

GARBER, J.:   This action was brought by the McKee-Brown Lumber Company in the district court of Oklahoma county against D. F. Harness for a balance due on an account for lumber and material furnished Gillespie & Son, contractors and builders, with which to build a dwelling house for the plaintiff in error.   In its petition, the lumber company alleged, substantially, that it entered into a verbal contract with Gillespie & Son, contractors and builders, whereby it furnished them with lumber and material in the sum of $793.85, with which to construct a residence building for D. F. Harness, on the corner of Eighth and Broadway, Oklahoma City; and that the same was used in the construction of said building, with the exception of a small amount returned to it by Harness, and for which it gave him credit in the sum of $47.91; that it received the further sum of $200.00 cash from Gillespie & Son on said account, leaving a balance due and unpaid in the sum of $545.94; that on or about the 3rd day of July, 1903, Gillespie & Son abandoned their contract for the construction of said house, and, thereupon, Harness requested the defendant in error to continue delivering lumber and material necessary to complete its construction, giving his promise to pay for the same; that said request was complied with, and the lumber and material necessary for the completion of the construction of said house was delivered by defendant in error; that during the month of August, 1903, the defendant in error was preparing to file a materialman's lien on the premises to secure its claim for the lumber furnished in the construction of the house, but upon the request of Harness to file no lien and to take no steps for the collection of said account and upon the assur-

ance and promise that he, the said D. F. Harness, would assume the payment thereof in full for all material furnished, and, relying thereon, the defendant in error refrained from filing and establishing its lien to secure its account, and, thereafter, and after the time for filing said lien had expired, it presented its account to Harness and requested payment, which was refused; that by reason of the promise to pay, and on account, and in consideration of which the defendant in error refrained from causing to be filed its lien, the said Harness became liable to pay the defendant in error the amount of its claim in the sum of $545.94 with interest thereon from the —— day of September, 1903.

For his answer, plaintiff in error set up: First, a general denial: Second, alleged, substantially, that he had entered into a contract with Gillespie & Son, contractors and builders, to erect a dwelling house for him at the price and sum of $2,562.00; that said Gillespie & Son were to furnish all the material and construct said house; that the McKee-Brown Lumber Company was advised, and knew of such contract and, further knew, that the contractors were to furnish and pay for all the material themselves; that on the —— day of August, 1903, he had paid to Gillespie & Son on the contract for the building of said house the sum of $2,244.68, leaving a balance due of $317.32; that the McKee-Brown Lumber Company was advised of such payment and knew that Gillespie & Son had purchased material to the amount of $459.75 of the T. F. Sullivan Lumber Company; that the said lumber company had instituted suit in the district court for the indebtedness against plaintiff in error for said lumber; and that if the defendant in error was entitled to any-

thing on its account it would only be its *pro rata* share of $317.32 due on his contract with Gillespie & Son.

The issues thus joined were tried to a jury and a verdict returned in favor of the defendant in error for the amount of its claim in the sum of $545.94. A motion for a new trial being overruled and exceptions saved, this appeal is brought here upon petition in error and case made for review.

Since the filing of the case made, plaintiff in error on motion, was permitted to amend under section 1, article 4, of chapter 28 of the Session Laws of 1905, attaching a recital to the effect that the case made contained all the evidence introduced in said cause. The defendant in error moves the dismissal of this appeal upon the ground that the case made shows affirmatively that certain evidence considered in said cause is not contained in the case made, viz:

"Certain memoranda or tickets showing a description of the lumber and material delivered, for the payment of which this suit is brought."

A careful examination of the record discloses that while a witness for the lumber company was on the stand he exhibited at the request of counsel certain books of account, memoranda, tickets and receipts, and was permitted, without objection, to testify as to their character and relation to the transaction; yet, they were never offered in evidence and, properly, were not made a part of the record in this case. So far as we are able to determine, the case made contains all the evidence properly offered and introduced, and the motion to dismiss will therefore, be overruled.

While numerous errors are assigned in the petition in error for the reversal of this case, only two are presented and

urged for consideration. One of them challenges the suffi-
ciency of the evidence in support of two material propositions
essential to the support of the verdict and judgment, and the
other, the statement of the law as given by the court in the
instructions to the jury.

In order for the lumber company to recover in this ac-
tion it was necessary for it to establish by a preponderance
of the evidence the existence of a state of facts that in law
would give it the right to file a lien against the premises of
the defendant for the lumber furnished, and plaintiff in error
contends that there is no evidence in the record showing that
the lumber furnished by the company to Gillespie & Son was
ever used in the construction of defendant's house; and that
if the lumber and material were not used in its construc-
tion, the company had no right at any time to file a lien. The
evidence shows that Harness contracted with Gillespie & Son
for the building of a dwelling house for him at Eighth and
Broadway, Oklahoma City; that the lumber company sold
lumber and material to the contractors to be used by them
in the construction of the house and delivered the same at
Eighth and Broadway where the building was under construc-
tion, taking receipts for the delivery of said lumber and ma-
terial from the employes engaged in the construction of the
building; that after the completion of the house Harness re-
quested the lumber company to give him credit for material
returned; and that at later periods he called upon the com-
pany at its place of business inquiring as to the amount of
its claim for lumber used in the construction of his house,
and as to the amount of credits given on said account, and
while the defendant appeared upon the witness stand and tes-

tified at considerable length in relation to all the details of the transaction the record fails to disclose any evidence whatever to negative the proposition that the lumber and material furnished by the company was in fact used in the construction of his house, with the exception of a small amount returned, and for which it gave credit in the sum of $47.91; that it received the sum of $200.00 from Gillespie & Son prior to their abandonment of the contract, which amount was properly credited on said contract, leaivng a balance due and unpaid in the sum of $545.94. That the question as to whether or not the lumber and material was actually used in the construction of the house was properly submitted to the jury is clearly shown by the instruction of the court to the jury. Instruction No. 2, reads as follows:

"You are further instructed that before the plaintiff can recover, it must establish by the testimony and evidence as stated in these instructions that it sold and delivered to Gillespie & Son the lumber aggregating the sum of $545.94; and that such lumber so sold was used in the construction of the house for the defendant under a contract with Gillespie & Son for its erection; and that such lumber was *actually* used in the construction of said house."

It will be seen that the court fairly submitted the question to the jury whether or not the lumber and material furnished by the lumber company was actually used in the construction of defendant's house.

In addition to the necessity of establishing the proposition that the lumber company had a right to file a lien, it was necessary to establish the agreement alleged to have been made between the lumber company and Harness, viz: That in consideration of the latter's promise to pay the ac-

count the former would refrain from filing its lien, and, because of its reliance upon said promise its right to file said lien was lost. While the testimony relative to this question was somewhat contradictory, yet, we think it was sufficient to support the verdict and judgment. McKee, the managing partner of the lumber company, testified that Harness came to his office before the time had expired for filing the company's lien and requested him to "take no further steps in the matter; and I will settle this account;" that at the time of this conversation he was preparing to file a lien for the company in case Harness refused to pay the account; and that it was understood that "take no further steps in the matter" was a request from Harness to the lumber company to refrain from filing its lien; and that "I will settle this account" was the consideration which induced the company to "take no action." While the language quoted was denied by Harness, and all intention to convey the interpretation placed thereon disclaimed, several conversations in which he made inquiries relative to the amount of the account was admitted; also, his request for the lumber company to take back material not used and give him credit for the amount, which was corroborative of that portion of the conversation in which McKee testified: "He said, 'I will settle this account.'" That the learned trial judge recognized that the question of the agreement was the controlling issue in the case is clearly shown by instruction number 4 which reads as follows:

"You must also find before the plaintiffs can recover that after this lumber was sold and delivered the defendant, Harness, told the plaintiffs, in substance, that if they would refrain from filing a lien against the property of the de-

fendant he would pay the same; and that the plaintiffs relying upon such promise upon the part of the defendant failed to file such lien and thereby lost its rights to a lien upon the property of the defendant by reason of such delay. That is, to say, you must find that the language which was used by the plaintiffs, or one of them, and the defendant amount to such a contract, and that at the time of such conversation, each of the parties understood that if the plaintiffs delayed, and didn't file a lien that in consideration of such delay, and a failure to file a lien, the defendant would become responsible to the plaintiffs for the amount of its account."

Thus it will be seen that the two material issues in this case were supported by evidence and fully submitted to the jury by the trial court under proper instructions. And the finding of the jury on disputed questions of fact, and the judgment of the court thereon will not be disturbed by the court where the record shows evidence reasonably tending to support such finding. That there was a sufficient considera- tion to support the agreement whereby the lumber company waived its right to file its lien is well settled by the authorities. Page in his excellent work, Contracts, volume 1, paragraph 274, says:

"A valuable consideration is some legal right acquired by the promisor in consideration of his promise or forborne by the promisee in consideration of such promise. A common form of stating the same principle is that a valuable consideration for a promise may consist of a benefit to the promisor, or a detriment to the promisee. 'Benefit,' as used in this connection means that the promisor has in return for his promise acquired some legal right to which he would not otherwise have been entitled; 'detriment' means that the promisee has in return for the promise forborne some legal

right which he would otherwise have been entitled to exercise."

And it has been held that:

"The release of a lien such as a mortgage, or a vendor's lien, or a mechanic's lien, or a judgment lien, or a levy, or a lien on chattels, or a pledge, or a release of an attachment, or a waiver of an attorney's lien on papers, or a waiver of the right to obtain a lien are good and sufficient considerations." Page on Con. 1st. vol. par. 287, and authorities therein cited.

The second assignment of error, that the court erred in its charge to the jury can not be reviewed here, unless the record affirmatively shows an exception to the instructions of the court at the time they were given. And, such an exception, the record in this case fails to disclose.

Without a critical examination, however, we are clearly of the opinion that the instructions given as they appear in the record fully, fairly and correctly stated the law of the case, and that the evidence was sufficient to sustain the verdict and judgment of the court. Finding no error in the record, the judgment of the district court of Oklahoma county will therefore be affirmed.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.