MARY. I. DAVIS, *et vir*, v. BEN BATTLE and ROBERT T. HICKS, a co-partnership doing business under the partnership name of BATTLE & HICKS.

182 So. 243.

Opinion Filed March 4, 1938.

On Rehearing June 15, 1938.

Extraordinary Petition for Rehearing Denied July 6, 1938.

*Copeland & Therrel,* for Appellants;
*Redfearn & Ferrell,* for Appellees.

CHAPMAN, J.—On June 13, 1937, plaintiffs below filed in the Circuit Court of Dade County, Florida, a suit in equity against Mary I. Davis, a married woman, to subject her separate property to an equitable lien for the sum of $1137.50 growing out of the following instrument:

"Miami Beach Realty Board Standard Form a Deposit Receipt

"Miami Beach, Florida, February 28, 1936..

"Receipt is hereby acknowledged of the sum of Five Thousand Six Hundred ................Dollars ($5,600.00) from J. Paul Baker, Jr.

"The above cashier's check for $4,600.00 to be held in the escrow department of the National Title Company pending final closing of this sale, as a deposit on account of the purchase price of the following described property upon the terms and conditions as stated herein.

"Description of property: Lots 3, 4, 5 and 6, of Block 27, Ocean Front Property of the Miami Beach Improvement Company, located at the Southwest corner of 36th Street and Collins Avenue, Miami Beach, Dade County, Florida. Also the fee simple title to a strip of land 16 feet wide and 100 feet long, bounded on the West by Lots 5 and 6 aforesaid, and on the East by Lots 3 and 4 aforesaid, said strip at one time having been an alley for the benefit of said property and said strip having heretofore been vacated by the City of Miami Beach, together with all riparian rights appurtenant to all aforesaid property.

"The full purchase price is $56,062.50; $26,062.50 cash of which the above $5,600, is part, to be paid by the purchaser on the closing of this transaction. The balance of $30,000 to be paid by purchaser giving a mortgage in the amount of $30,000 payable $10,000 in 1 year, $10,000 in 2 years and $10,000 in 3 years from date of closing of this transaction. Interest of 8% on mortgage, payable semiannually. The entire mortgage can be paid off on any interest date except the first interest date which will be six months from the date of the above described mortgage.

"Property to be conveyed free and clear of all liens and incumbrances. Taxes to be pro-rated as of closing date.

"It is understood and agreed that this property is being sold and purchased subject to the restrictions and limitations of record common to the neighborhood, and subject to any easements for public utilities, which may be of record, or may become liens through pending legislation before consummation of contract.

"It is agreed that this transaction shall be closed and the purchaser shall pay the balance of the first payment and execute all paper necessary to be executed by him for the completion of his purchase within 30 days from delivery or tender to him of a complete abstract of the said property; otherwise the sum this day paid shall be retained by the seller as liquidated damages, and the parties hereto shall be relieved from all obligations under this instrument.

"The seller is to furnish a complete abstract showing his title to be good and marketable, but in the event that the title shall not be found good and marketable, the seller agrees to use reasonable diligence to make the said title good and marketable, and shall have a reasonable time so to do, and if after reasonable diligence on his part said title shall not be made good and marketable within a reasonable time, the seller shall return the money this day paid and all moneys that may have been paid under this contract, and thereupon he shall be released from all obligations hereunder. Or, upon request of the purchaser, he shall deliver the title in its existing condition. .

"This contract shall be binding upon both parties when approved by the owner of the property above described.

"Battle & Hicks, Broker
"By Wm. A. Rhodes

"I, or we, agree to purchase the above described property on the terms and conditions stated in the foregoing instrument.

"Witness:
"Wm. A. Rhodes            "J. Paul Baker, Jr.    (Seal)
"R. T. Hicks                        .or his assignee

"I, or we, agree to sell the above mentioned property to the above named purchaser on the terms and conditions stated in the above instrument.

"Witness:
"Catchings Therrel        "MARY I. DAVIS      (Seal)
"Wm. A. Rhodes

"I, or we, agree to pay to the above signed broker, as commission for finding a purchaser for the above property, the sum of Eleven Hundred Thirty-seven____50/100 Dollars ($1137.50) or one-half of the deposit, in case same is forfeited by purchaser, provided the same shall not exceed the full amount of the commission.

"Witness:
"Catchings Therrell
"Wm. A. Rhodes            "MARY I. DAVIS      (Seal)`
                                     "GEORGE W. DAVIS  (Seal)"

The sum of $1137.50 is a commission for finding a purchaser able and willing to buy the property, and after appellees had performed each and every requirement of the instrument, the defendant below directed that a deposit of $5600.00 be returned to the purchaser and she, in turn, listed her property with other real estate brokers of Miami Beach at the sum of $65,000.00, it being asserted that the finding of a purchaser for the property was an agreement inuring to the benefit of the separate property of Mrs. Mary I. Davis.

A motion to dismiss the bill of complaint on a number of grounds was by the Court overruled. On September 7, 1936, an answer was filed by Mary I. Davis and her husband, George W. Davis, denying the material allegations of the bill of complaint, the principle defense being that no money or other thing of benefit to the separate property of Mary I. Davis was received through the activities of the plaintiffs and that no increase of benefit to her separate property accrued, and she denied that the value thereof was enhanced, increased or was benefited by the instrument, *supra,* of the parties.

Considerable evidence was taken before a Special Master authorized to make findings as to facts and law, and after hearing all the testimony, the equities of the cause, he so reported, to be with plaintiffs and recommended a decree subjecting the separate property of Mary I. Davis to the payment of the real estate broker's commission in the sum of $1137.50; that plaintiffs had an equitable lien on the property and the same should be sold to pay the same. On final hearing the equities were held to be with the plaintiffs, when an appeal was taken and the cause is here for review on a number of assignments of error.

It is asserted that the plaintiffs found a purchaser for the property, ready, willing and able to pay for it; that the plaintiffs' part of the contract was executed and they were as a matter of law entitled to their commission in the sum of $1137.50; that title to the property was in Mary I. Davis and she declined to close the trade but directed the "binder" returned to the purchaser and another listing was made at an advance in price of about $9,000.00. The plaintiffs contend the contract of sale inured to the benefit of Mrs. Mary I. Davis, enhanced its value, and increased its benefits, all of which was denied by the defendants below. The written agreement was to find a purchaser for the property, ready,

willing and able and the terms of the employment was not to sell the property. In the case of Hutchins & Co. v. Sherman, 82 Fla. 167, 89 Sou. Rep. 430, this Court said:

"The authorities uniformly hold to the effect that where a broker procures a customer willing, ready and able to purchase property offered for sale according to the terms of the offer and the transaction is defeated on account of some fault of the principal, the broker is entitled to his commission although the transaction is not consummated. 9 C. J. 623; Camp Lbr. Co., et al., v. Tedder, 78 Fla. 183, 82 South. Rep. 865; Dotson v. Milliken, 209 U. S. 237, 28 Sup. Ct. Rep. 489, 52 L. Ed. 763; Schweidt v. Storandt, 143 N. Y. Supp. 161; Beamer v. Stuber, 164 Ia. 309, 145 N. W. Rep. 936; Church v. Dunham, 14 Ida. 776, 96 Pac. Rep. 203; Smith v. Adelberg, 72 Wash. 434, 130 Pac. Rep. 494; Realty Bonds & Finance Co. v. Point Richmond C. & L. Co., 171 Cal. 238, 152 Pac. Rep. 433; Richardson v. Olanthe Milling, etc., Co., 164 Ala. 411, 52 Sou. Rep. 659, 140 Am. St. Rep. 45."

The rule as to commission for finding a purchaser ready, willing and able to purchase is well settled in Florida. The usual procedure is in a common law action, but the defendant below being a married woman, her liability therefor, if any, must be determined by a court of equity. Section 2, Article XI, of the Constitution of Florida provides:

"Section 2. A married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestrated for the purchase money thereof, or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs; or im-

provements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent."

The question for decisions here is: Are the benefits arising out of the contract, *supra,* sufficient for a recovery to be enforced in a court of equity as against the separate property of a married woman?

The case of Blodgett v. Steinmetz, 98 Fla. 238, 123 Sou., Rep. 761, was a suit by a real estate broker against a married woman to recover a commission in which the married woman agreed in writing to pay one-half of the deposit, which was the sum of $1250.00, if it was forfeited by the purchaser. The deposit was forfeited by the purchaser when Mrs. Steinmetz repudiated her written agreement, kept all the deposit and refused to pay the real estate broker one-half of the forfeited deposit which she in writing agreed to pay. An equity suit was filed against her in which it was sought to subject her separate property to the payment of the debt which she in writing obligated to pay the real estate broker. The theory of the equity suit was that the separate property of Mrs. Steinmetz was increased by the activities of the real estate broker in assisting in a sale whereby a forfeiture of the deposit was received by Mrs. Steinmetz. The Court said:

"The agreement made by her was equivalent to the following proposition: since by Blodgett's activities he increased or benefited the separate property of Mrs. Steinmetz by the amount of $1250 forfeited by Zachry because of his failure to purchase the land, Mrs. Steinmetz agreed in writing to pay Blodgett a part of the sum to be received. There can be no question that the lawful acquisition by her of $1250 through the activities of Blodgett benefited her separate property by that sum. It was with reference to that increase or benefit that her agreement in writing was made. She was competent under the provisions of the

Constitution to make the agreement. It was for the benefit of her separate property. It resulted as the parties contemplated by an increase or benefit of her separate property to the extent of the sum forfeited. She was required to part with no part of her property to secure it and equity will not support her in a transaction of double dealing nor are the provisions of the Constitution intended to be used as a shield to cover breaches of faith in business transactions into which she may enter. When she makes an agreement in writing with another for the purpose of benefiting her separate property and agrees to pay for the services which bring it about her separate property may be subjected in equity to the end that her agreement shall be enforced and her obligation discharged. If her separate property is actually benefited by the services of one whom she engages and her agreement in writing is made with him for that purpose she is clearly liable."

In the case of Blood v. Hunt, 97 Fla. 551, text pages 571-72-73, 121 Sou. Rep. 886, this Court had before it the property of married women when it said:

"A wife's *separate estate* is an equitable estate in property the legal title to which is in some other person for her benefit. In equity such separate estate may be·subjected to the payment of debts of the wife, if not restrained .by the legal effect of the instrument creating the estate. Dollner v. Snow, 16 Fla. 86; 30 C. J. 795; 870, 13 R. C. L., page 1134, *et seq.* A wife's *separate property* in Florida is that which she holds in her own right by virtue of the Act of March 6, 1845, by Sec. 26, Art. IV, Constitution of 1868; and by Sec. 1, Art. XI, Constitution of 1885. See Pom. Eq. Juris. (4th Ed.) Sec. 1099, *et seq.*

"As at common law married women could not in general make contracts that would be binding on them personally they could not be sued at law for breach of con-

tract, and this was the general rule recognized and applied by courts of equity both in England in 1776 and in Florida after the cession in 1821. But in proper cases courts of equity would subject the separate equitable estates of married women to debts made by or for them which they, upon equitable principles, should pay for their equitable estates. See Norton v. Tugvill, 2 Peere Williams 144; 30 C. J. 870 and cases cited. Vols 1 and 3 Pom. Eq. Juris., Section 52, *et seq.* Sec. 1098, *et seq.* This procedure in equity remedied in part the harshness and injustice of the common law. It enabled married women to have at least some transactions *for their own benefit,* by securing their creditors to the extent of making the separate equitable estate of married women liable for debts incurred for their benefit in such transactions. * * *

"This was the state of the law in Florida when by the Act of March 6, 1845, married women were specifically accorded the power to hold in their own right and by proper procedure to dispose of their separate property. This statute, if not also the Acts of 1823 and 1935, gave to married women the legal title to their 'separate property,' sometimes called "statutory separate property," because it was definitely secured to married women by the Act of March 6, 1845. See also Sec. 26, Art. IV, Constitution of 1868; Sec. 1, Art. XI, Constitution of 1885. These statutes did not authorize married women to make contracts in general, but they were authorized to sell, convey or to mortgage their separate property, provided their husbands join in the sale, conveyance or mortgage in the manner required by the statutes. Secs. 5674, 5676, Comp. Gen. Laws 1937.

"Prior to the adoption of the Constitution of 1885, the *separate property,* Blumer v. Polak, 18 Fla. 707, of a married woman, as distinguished from her *equitable separate estate.* Smith v. Poythrass, 2 Fla. 92, Merritt v. Jenkins,

17 Fla. 593, was subjected in equity to the payment of certain debts of hers, under general principles of equity jurisprudence. Schnable v. Betts, 23 Fla. 178, 1 So. R. 692; O'Neil v. Percival, 25 Fla. 118, 5 So. R. 809; Dollner v. Snow, 16 Fla. 86, 13 R. C. L., page 1147; Fairchild v. Knight, 18 Fla. 770. The remedy in equity was afforded because there was no remedy at law against married women who had no power at common law to make binding contracts, and the statutes of the State have not changed the common law respecting the powers in general of married women to make binding contracts. Harwood v. Root, 20 Fla. 940, 960, Va. Ca. Chem. Co. v. Fisher, 58 Fla. 377, 50 So. Rep. 504; Bailey v. Smith, 89 Fla. 303, 103 So. R. 833, 107 So. Rep. 350, McGill v. Art Stone Con. Co., 57 Fla. 498, 49 So. Rep. 539; Livingston v. Powers, 85 Fla. 254, 95 So. Rep. 622."

In Blodgett v. Steinmetz, *supra,* this Court held that the married woman's separate property was increased by receipt of a forfeiture of the deposit in the sum of $1250.00 brought about by the activity of the real estate broker in procuring a purchaser and inducing him to make the deposit. In the case at bar Mrs. Mary I. Davis listed her property with the appellees for the purpose of obtaining a purchaser, ready, willing and able and at the same time in writing fixed the total amount acceptable to her for it. When the appellees obtained the purchaser according to the agreement, it was possibly realized by the appellant that her property was being sold for a sum less than its market value and desiring an increased amount then stipulated for it, she repudiated her written agreement with appellees and advanced the total price to the extent of $9,000.00 and listed it with another broker. The appellees, however, had performed their agreement and the contract was with them executed and the appellants could have had they so desired.

In Harkness v. McKee-Brown Lbr. Co., 17 Okla. 624, 89 Pac. Rep. 1020, text 1022, in defining "benefits" the Court said:

"That there was a sufficient consideration to support the agreement whereby the lumber company waived its right to file its lien is well settled by the authorities. Page in his excellent work of Contracts (Vol. 1, par. 274) says: 'A valuable consideration is some legal right acquired by the promisor in consideration of his promise or forborne by the promisee in consideration of such promise. A common form of stating the same principle is that a valuable consideration for a promise may consist of a benefit to the promisor, or a detriment to the promisee. 'Benefit,' as used in this connection, means that the promisor has in return for his promise acquired some legal right to which he would not otherwise have been entitled. 'Detriment' means that the promisee has in return for the promise forborne some legal right which he would otherwise have been entitled to exercise.' "

Bouvier's Law Dictionary, Vol. 1, page 338, defines "benefit" as: "Profit, fruit or advantage. The acceptance of the benefits of a contract estops a party from denying its validity; City of St. Louis v. Davidson, 102 Mo. 149, 14 S. W. 825, 22 Am. St. Rep. 764; Spencer v. Jennings, 139 Pa. 198, 21 Atl. 73; Wood v. Bullard, 151 Mass. 324, 25 N. E. 67, 7 L. R. A. 304; Palmerton v. Hoop, 131 Ind. 23, 30 N. E. 874; Gladstone Exch. Bank v. Keathing, 94 Mich. 429, 53 N. W. 1110; St. Louis & S. F. R. Co. v. Foltz, 52 Fed. 627."

It is admitted on the record that appellants breached the contract and a complete and adequate remedy exists therefor, except as to married women and some others but when a remedy is sought against a married woman to subject her separate property to the payment of her written promise

or obligation the burden of proof is on the appellants to show that her separate property received the benefits. It cannot be a speculative or a contemplated benefit, neither can this benefit depend upon the law of supply and demand or other economic law. The benefit was clearly shown in Blodgett v. Steinmetz, *supra*. We have searched in vain for the evidence to support the conclusions of the Chancellor below on this point. The decree appealed from is reversed for further proceedings not inconsistent with this opinion. It is so ordered.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

ELLIS, C. J., and BROWN, J., dissent.

BROWN, J. (dissenting).—Under the Constitution, a married woman's separate real or personal property may be charged in equity and sold, and the profits thereof sequestrated, for money due upon any agreement made by her in writing "for the benefit of her separate property."

If the contract involved in this case was valid in its inception, that is, if, at the time it was made by the married woman, it was made for the benefit of her separate property, then certainly her subsequent repudiation of the contract if there was such, or failure to carry it out, could not have had the effect of rendering it invalid. It appears that Mrs. Davis purchased this property in 1934 for approximately $20,000.00. Therefore, by the terms of her contract with Battle & Hicks, for the finding of a purchaser at a purchase price of $56,062.50, $26,062.50 to be paid in cash and the balance of $30,000.00 to be secured by a mortgage payable in one, two and three years, Mrs. Davis would have made a profit of approximately $35,000.00. Certainly this would have been a benefit to her separate property. The brokers, Battle & Hicks, found a purchaser who was ready, willing and able to purchase on the terms set forth in Mrs. Davis' contract with Battle & Hicks. Mrs. Davis

accepted the purchaser, who paid a binder of $5600.00 to an escrow holder named by the parties, which sum was deposited as a part of the purchase price, and Mrs. Davis agreed in writing to pay said brokers $1137.50 as a commission for finding the purchaser. Then shortly thereafter there was some objection made by the purchaser to the abstract and did not close the deal and listed the property for sale at a higher price, to-wit: $65,000.00. But a subsequent increase in real estate values, if there was such, real or supposed, would not invalidate the contract, which was valid when made. The $5600.00 was returned to the purchaser at the direction of Mrs. Davis. If the purchaser had defaulted in carrying out his contract, Mrs. Davis could have retained the $5600.00 as a forfeiture under the terms of the contract. Thus in any event Mrs. Davis would have benefited by the contract. The appellees had earned their commission. They had found a purchaser who had agreed to purchase according to the terms prescribed by the owner and who had entered into a binding contract with Mrs. Davis and husband to that effect. Since Mary I. Davis was a married woman the contract to pay commissions could not be enforced at law, but under our Constitution this contract was and is enforceable in equity. Both in morals and in equity, the brokers having earned their commission and Mrs. Davis having contracted in writing to pay such commission, the deecree of the court below in their favor should in my opinion be affirmed.

When an owner of real estate in a city desires to sell it and convert it into cash, in whole or in part, he or she is almost compelled to procure the services of a real estate broker. Mrs. Davis admitted that she wanted to dispose of her property. In order to do so, she sought the services of appellees and they found a purchaser who entered into a binding contract with her and deposited $5600.00 as part

payment of the purchase price. In any event the contract was worth $5600.00 to her because of the forfeiture clause contained therein. The contract was enforceable against the purchaser, and constituted a new and valuable asset obtained by the married woman through the offices of appellees for which she agreed in writing to pay them the sum of $1137.50. For all these reasons, the chancellor rightly held that the contract offered in evidence in this cause was in itself an agreement made by a married woman in writing for the benefit of her separate property. But if the contract was not, per se, on its face, for the benefit of her separate property, the proven facts and circumstances under which it was made showed that it was. The Master found that the purchaser was ready, willing and able to consummate the purchase in accordance with the contract and that the complainants did not consent to the cancellation of the contract of sale by Mrs. Davis or the return of the $5600.00 deposit.

Furthermore, the effect of this contract would have been to render Mrs. Davis's separate estate more liquid. She would have received in the place of the lot approximately $26,000.00 in cash and a first mortgage for $30,000.00, bearing 8 per cent interest. In the case of Harness v. McKee-Brown Lumber Co., 89 Pac. 1022, the Supreme Court of Oklahoma held:

"The word 'benefit' as used in the definition of valuable consideration to the effect that it may consist of a benefit to the promisor, means that the promisor has in return for his promise acquired some legal right to which he would not otherwise have been entitled." 1 Words and Phrases, second series, page 427.

The case of Blodgett v. Steinmetz, 98 Fla. 238, 123 So. 761, tends to support the holding of the chancellor below

in this case, and much of the reasoning of Mr. Justice ELLIS in that case is applicable here.

It might be observed also that here, as between the appellants and the appellees, we are dealing with a contract which was no longer executory, but which had been executed. The brokers had carried out their part of the contract and had secured a binding contract of purchase, together with earnest money amounting to $5600.00 for Mrs. Davis on the terms which she had agreed to. As between her and the purchaser, it was her duty to furnish an abstract showing a good title, and it was then the duty of the purchaser to pay the balance of the cash and execute the notes and mortgage. If the purchaser, after being furnished with such an abstract, failed to pay the balance of cash and to execute said notes and mortgage within thirty days, Mrs. Davis could have enforced the contract by specific performance or she could have retained the deposit of $5600.00 as liquidated damages.

It is contended that the contract was not a benefit to the married woman's separate property because the sale was not consummated, but it appears from the record that the sale was not consummated because of any fault on the part of the brokers.

It is further contended that the $36,000.00 of profit represented by the contract might be treated as "unearned increment" which the brokers did not create, but the fact remains that said unearned increment would not have been available to the married woman, and would not have inured to the benefit of her separate property, unless she could find some one who was willing to pay for the property a price which included this "unearned increment." When she offered the property for sale at approximately $56,000.00 she knew that she only had $20,000.00 invested in it and that all above the latter sum represented "unearned

increment," and knowing this she engaged, by written contract, appellees to sell the lot for a price which would return to her the investment she had in it together with a profit above said investment of $36,000.00. Thus the facts show that the contract in writing was made for the benefit of her separate property.

For these reasons I think the decree of the court below should be affirmed.

ELLIS, C. J., agrees to the conclusion.

### ON PETITION FOR REHEARING.

CHAPMAN, J.—On petition for rehearing it is contended that Mary I. Davis' estate was benefited and enriched in the sum of $1,137.50 by plaintiffs below in finding a purchaser ready, willing and able to buy the real estate of Mary I. Davis listed with the plaintiffs, and that this *contract*, alone, benefited and enriched her estate within the meaning of Section 2, Article XI of the Constitution of Florida. Many authorities from other jurisdictions are cited to support this conclusion.

In the case of Citizens Bank & Trust Co. v. Smith, 97 Fla. 601, 121 So. 900, the Court had before it Section 2 of Article XI of the Constitution of Florida, and designated the items for which the separate personal and real property of a married woman could be charged and sold in equity when this Court said:

"Section 2, Article XI of the Constitution of 1885, in effect provides that a married woman's separate real and personal property may be charged in equity and sold, or the uses, rents and profits thereof may be sequestrated (1) for the purchase money thereof; or (2) for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or (3) for the price of

any property purchased by her; or (4) for the value of labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property; or (5) for the value of agricultural or other labor bestowed upon her separate property with her knowledge and consent. . The intent of the organic provision is not to authorize married women to contract generally with reference to their separate property, but to define a remedy in equity against the separate real and personal property of a married woman for debts or obligations incurred by her or for the benefit of her separate property in the manner designated in the specifically stated five classes of cases where the organic and statute law of the State has not afforded such a remedy (though courts of equity have given similar remedies), and where mortgage liens to secure such debts or obligations are not given as authorized by organic or statutory provisions. This section provides for five distinct classes of cases in which a married woman's separate property may be charged in equity for debts incurred by her. The language was carefully chosen and a field of operation should be accorded to each of the five designated classes of cases. It is not likely that any particular obligation will fall within more than one of the designated classifications; so that the remedy will ordinarily operate upon each as coming within one and only one of the enumerated classes of cases. If a case more properly comes within one of the specified classes of cases, the remedy that is appropriate to that class only should be invoked."

The record discloses that prior to February 28, 1936, Mrs. Davis owned certain described lands in her own name located in Dade County, Florida, and listed the same for sale with Battle & Hicks, real estate brokers, whereby she authorized its sale for the sum of $56,062.50 to be paid

over a period of three years, and under the terms of dealings with the real estate brokers, she was to pay a brokerage fee when a purchaser, ready, able and willing to buy was obtained. The purchaser was obtained and deposited the sum of $5600.00 with the real estate brokers as a binder. She felt that she could obtain a better price for her property than the sum of $56,062.00 and accordingly cancelled her contract or agreement with Battle & Hicks for the sale of the property, and directed that the sum of $5,600:00 left by the proposed purchaser as a binder be by Battle & Hicks returned to J. Paul Baker, Jr., the original owner. The contract to purchase as obtained by Battle & Hicks for appellant's property did not increase the value of her real estate, neither did it improve the same, and the alleged benefit and enrichment flowing from said contract, *supra,* if any, is not such an enrichment or benefit as falls within Section 2 of Article XI of the Constitution of Florida.

The original opinion, upon reargument by counsel, is reaffirmed and adhered to.

WHITFIELD and TERRELL, J. J., concur.

BROWN and BUFORD, J. J., dissent.

BUFORD, J. (dissenting).—I am unable to concur in the opinion prepared by Mr. Justice CHAPMAN, or to now adhere to the original opinion filed herein on March 4th, 1938.

It is my opinion that the decree of the Chancellor was correct because Mary I. Davis' estate was benefited and enriched by the procuring of a sales contract and the escrow of $5,600.00 by plaintiffs below in finding a purchaser ready, willing and able to buy the real estate of Mary I. Davis listed with the plaintiffs, and that this *contract* alone benefited and enriched her estate within the meaning of Section 2, Article XI, of the Constitution of Florida; and I think the law as enunciated in the case of Blodgett v. Stein-

metz, 98 Fla. 238, 123 Sou. 761, is applicable here. The estate of Mary I. Davis was benefited by the services rendered by Battle & Hicks under her contract with them. The contract of sale and the escrow of cash provided thereby was a valuable asset in the hands of Mary I. Davis. She accepted the same pursuant to her contract with Battle & Hicks.

That she thereafter repudiated the sales contract and voluntarily released the money placed in escrow, she thereby placed Battle & Hicks in a position in which they could not subject that particular property of Mary I. Davis to the payment of the amount due them. By doing this, she made it possible for them to charge her remaining separate property for the payment of the amount due them under her written contract made with them for the benefit of her separate estate. See Harness v. McKee-Brown Lbr. Co., 17 Okla. 624, 89 Pac. 1020, a part of the text of which is quoted in original opinion; Holder v. West Florida Development and Investment Co., 103 Fla. 487, 137 Sou. 691. In the latter case we said:

"The right of the complainant in this case to specific performance by the Bank Trustee in the conveying of the title to the complainant is dependent upon facts which must be determined upon proper pleadings and proof. That is, whether or not under all the facts and circumstances she has paid to the land company all or more than she should have been required to pay under the terms of the contract and in the conduct of the parties in performance of the contract, and if it be found that she has paid in full all that she could be required to pay under the terms of the contract in connection with the conduct of the parties, then, although she is a *feme covert* she will be entitled to specific performance under the rule stated in Lenoir v. McDaniel, *supra,* wherein it was said:

" 'In a case where a contract containing mutual covenants is not enforceable as against one of the parties by reason of some disability, yet such party performs all the obligations on his part to be performed, the objection of lack of mutuality does not lie.' "

So we say that Mrs. Davis procured pursuant to her written contract a valuable asset to her estate and if she had performed her part of the sales contract 'she was in position to retain all the benefits accruing under that contract and her separate estate is chargeable to satisfy appellee's claim.

BROWN, J. concurs.