THOMAS WARREN *et als.* administrators of the estate of Samuel Whitmore, *vs.* SETH WEBB *et al.*

Hancock.   Decided April 2, 1878.

*Will.   Words—use and benefit.*

The testator by will gave to his wife for and during her life, all his estate real and personal, to have and to hold to her and her assigns for the term aforesaid for her proper use, benefit and support and maintenance, and after her decease said estate or the residue and remainder thereof to his children. *Held*, 1. Not to be an absolute gift to the wife of the real or personal estate but that she took a life estate with an implied power to sell the real estate upon the happening of the contingency and to effectuate the purpose mentioned in the will. 2. That the personal estate she might, at her discretion, convert into money or other property, reduce the effects and credits to cash or exchange them for other property, invest or change the investment of the money, and in all respects manage the property as a prudent owner would to facilitate proper use and benefit therefrom. 3. That where she applied money and an unpaid note to the part payment of a vessel built by the maker of the note, that the executor could not recover of the maker either for the note or the money,

*Words*, "use and benefit," and "support and maintenance," see opinion.

ON REPORT.

ASSUMPSIT, on a promissory note of defendants for $666.66, dated February 6, 1864 ; also for $1,545, cash received by them of testator's widow.

The defense was that, although the note and the money were the property of the testator, yet they were given to her by will ; and having been applied by her in payment to the maker of the note for one-quarter of the schooner "A. H. Whitmore," built by him, the executor could not rightfully recover for the note or the money.

The plaintiff's position was that the will did not authorize such an appropriation.

The facts, sufficient to raise the legal points, are stated in the opinion.

*C. J. Abbot*, for the plaintiffs.

*A. Wiswell & A. P. Wiswell* with *C. A. Spofford*, for the defendants.

DICKERSON, J. This case is presented on report, and involves a construction of the will of Samuel Whitmore, late of Deer Isle, deceased. The principal questions arise under the second item in the will, which is as follows : " I give, bequeath and devise to my beloved wife, Abigail H. Whitmore, for and during her natural life, all my estate and property, real, personal and mixed, wherever found and however situated, to have and to hold the same to her and her assigns, for and during the term aforesaid, for her proper use, benefit and support and maintenance ; and after her decease, said estate and property, or the residue and remainder thereof, to be legally divided to and among my children, namely," etc. The first item of the will provides for the payment of the testator's debts and funeral charges by his executors, Seth Whitmore and William Whitmore, who returned an inventory of the estate in June, 1867. One of the executors, William Whitmore, died before any account was filed by the executors in the probate court. Seth Whitmore, the surviving executor, filed the first and only account in the probate court, in June, 1870, charging himself with the personal estate, and giving credit to the estate for debts paid, including the sum of $2,747.56

paid to the widow. That account shows a balance, due the estate from the executors, of $121.27. Subsequently to filing this account, Seth Whitmore resigned his trust as executor, whereupon the present plaintiffs, Thomas Warren and Franklin Closson, were appointed administrators *de bonis non;* they filed an inventory in the probate court, December term, 1871, consisting of real estate appraised at $230.00, and personal property, mostly household furniture, amounting to $208.00. No question arises with regard to the payment of the debts or funeral charges of the testator, who died April 3, A. D. 1864.

The intention of the testator, as deduced from the language of the instrument, is the criterion for the interpretation of wills. When ascertained, such intention is to have effect, unless it is inconsistent with the rules of law. The disposing words of the will, "give, bequeath and devise" to the testator's wife all his property, real and personal, "during her natural life," with remainder over to his children, creates a life estate only, unless the subsequent language enlarges, limits or qualifies their meaning. But for the limitation of the habendum, "during the term aforesaid," that would seem to enlarge the estate created; but with that limitation it does not admit of that construction. It is, however, clear that the subsequent words, "for her proper use" and "benefit," are not synonymous with the phrase, "for her support and maintenance," but have a more enlarged signification, and imply that the devisee was not only to have simply "her support and maintenance" out of the estate, but, also, a right to employ it for her advantage, gain and profit. Her right of "use" and "benefit" was superadded to her right of "support" and "maintenance;" otherwise those prior words are meaningless. Consequently the devisee had such power over and control of the estate devised as was reasonably necessary, not only to secure her "support" and "maintenance," but, also, to facilitate her "proper use" and "benefit" thereof.

The subsequent clause, providing for the division, among the testator's children, of "said estate and property, or the residue and remainder thereof," after the devisee's decease, has the same implication. This language necessarily implies the liability of the

estate to be diminished while in the hands of the devisee, and as there is no provision in the will for its diminution except through her agency, her right of control and even of disposal, at least upon the happening of one or more of the contingencies contemplated in the will, is inescapable. Something more must have been intended by this phraseology than "the residue and remainder," after the ordinary wear and tear of the property, natural decay and loss by inevitable accident, else the rights of the remainder-man would have been expressly qualified by such contingencies. Besides, the law would take notice of such considerations in determining the rights of parties, whether mentioned in the will or not.

In *Harris* v. *Knapp*, 21 Pick. 412, 416, a case strongly analogous to the one at bar, the testatrix devised one-half of what remained of her real and personal estate to her daughter, "for her use and disposal during her life," and whatever should remain at her death she gave to other relatives. The court gave great force and effect to the phrase, "whatever shall remain at her death," deducing from it the conclusive implication that the devisee had the right to dispose of the property. The use of the word "disposal" in the will, however, undoubtedly contributed to the conclusion arrived at by the court.

In *Stevens* v. *Winship*, 1 Pick. 318, the court held that the wife took only a life estate with a contingent power to sell, under a will devising a messuage to her for life and giving her full power to sell all his real and personal estate for her comfortable support, in case she should stand in need. In that case, it was decided that the wife took only a life estate with a contingent power to sell, and that the burden is on those claiming under the wife to show that the power was well executed, and that the contingency had happened; and that the jury were to determine whether the contingency existed. See, also, *Larned* v. *Bridge*, 17 Pick. 339.

In *Scott* v. *Perkins*, 28 Maine, 22, 35, the bequest was of the estate and income, to be disposed of for the devisee's comfort and convenience during life, and the court held that she had a right to sell and dispose of the personal estate when that was necessary

for her comfort and convenience, and that it was for the jury to determine whether such contingency had arisen, in a controversy between the vendee of the personal estate, who purchased it of the devisee, and a third party, having received delivery of it from the administrator. The jury found for the vendee of the devisee, and the court sustained their verdict.

The principal case is obviously no stronger in support of the devisee's unqualified power of disposal than the last two cases cited, where the word " disposal" was used in the will and the court substantially denied such power. It is more like *Downing* v. *Johnson*, 5 Coldw. (Tenn.) 229, where the bequest was to the wife " of the whole estate, both real and personal, for and during her natural life, to be by her freely possessed and enjoyed. . . the balance of the property, money or other effects that might be on hand at her decease," to go to others. In that case the court held that the wife was entitled to the possession, use and enjoyment, during her life, of all the property belonging to the testator at the time of his death, and that if her support and maintenance, in her discretion, required it, she could consume the *corpus* of the entire estate except the land.

The court are of opinion that it was not the intention of the testator to empower his widow to sell the estate bequeathed to her, in any event, at her will and pleasure, but that she took a life estate, with an implied power to sell upon the happening of the contingency or contingencies, and to effectuate the purposes mentioned in the will; her power to sell depended upon these; if they did not require a disposal of the property the widow had only a life estate. The court are also of opinion that, in order to give full scope and effect to the testator's words, " for her proper use " and " benefit," he must have intended to give his widow the possession, management and control of all the bequeathed estate, both real and personal, and that, in respect to the personal estate at least, she might, at her discretion, convert it into money or other property, reduce the effects and credits to cash or exchange them for other property, invest or change the investment of the money, and, in all respects, manage the property as a prudent owner would in order to facilitate his proper use and benefit therefrom.

It follows that this action cannot be maintained. The testimony on both sides conclusively shows that the proceeds of the note of $666.66, bequeathed to Mrs. Whitmore and payable by the defendants to the testator, and also the sum of $1,545,—amounting in all to $2,319.36—sought to be recovered in this action, were appropriated for the payment of one-quarter of the schooner " A. H. Whitmore," with her knowledge and consent, and at her instance, and with the concurrence of the then executors, for her benefit. Seth Whitmore, one of the executors, introduced by the plaintiffs, testified that, according to his best recollection, the note was paid by Webb & Whitmore at the request of his mother, the devisee ; that he paid the $1,545 to the same parties, and that he understood those funds were paid in towards a quarter of the schooner " A. H. Whitmore ; " " the note," he adds, " was reckoned in on the fixing up of the sum that was due for this part of the vessel. . . Mother had no money but what was left her by father in his will. . . I paid that money to Webb & Whitmore because my mother requested me to."

The evidence shows that the " A. H. Whitmore " was built by Jeremiah Burnham ; that the devisee, Mrs. Abigail H. Whitmore, agreed in writing to take one-quarter, and that Seth Webb, one of the defendants, finally took the remaining three-quarters. Seth Webb testified that the devisee paid for one-quarter of the vessel through Seth Whitmore, one of the executors, and that he paid about $2,319 for Mrs. Whitmore. The books of Webb & Whitmore, in their account with the estate of Samuel Whitmore, show a charge against the estate of $2,319.36, for one-fourth of schooner " A. H. Whitmore," on July 9, 1867 ; and C. H. L. Webb, their book-keeper, testified that " the charge of $2,319.36 was cash for one-quarter of the ' A. H. Whitmore,' paid out by Webb & Whitmore."

Although Seth Webb appears as sole owner of the schooner "A. H. Whitmore " in the temporary register issued upon the master carpenter's certificate, and also in the enrollments of the vessel subsequently issued, and although, owing to a disagreement of the parties, no bill of sale was ever issued to the devisee or the executors, of one-quarter of the schooner, yet these considera-

tions are by no means conclusive that Seth Webb was in fact sole owner. On the contrary, the evidence conclusively shows that Seth Webb paid for three-fourths of the vessel only in his own right, and that the proceeds of the note in question, and the other sum of $1,545, received from Seth Whitmore, executor, by direction of the devisee, were appropriated for the payment of one-quarter of the "A. H. Whitmore," by direction and for the benefit of the testator's widow. In doing this, as we have seen, the devisee exercised the power given her under the will, to convert the choses in action bequeathed to her into money or personal property, and also to invest the money thus received in personal property. The proceeds of the note and the other money sued for, having been lawfully appropriated in accordance with the intention and direction of the devisee, cannot be recovered of the defendants in this action.

*Judgment for defendants.*

APPLETON, C. J, DANFORTH, VIRGIN, PETERS and LIBBEY, JJ., concurred.