# CHARLESTON.

DIEHL *v.* MIDDLE STATES LOAN, BUILDING & CONSTRUCTION CO.

Submitted January 17, 1911.   Decided February 25, 1913.

1.  WILLS—*Construction—Property Conveyed—Principal or Income.*

    Where by apt language a testator manifests an intent to sever the product of any species of property from its source, as where only a life estate in the income is given, with remainder over, a bequest of income will not carry an absolute estate in the principal.  (p. 78).

2.  SAME.

    Where a testator bequeathes to his wife "the rents, issues and profits" of personal property to "hold and enjoy during her natural life," and to his children "the reversion or remainder" of all his estate, the widow takes by the will only the usufruct of the personalty; and she can not voluntarily impair or diminish the corpus thereof to the detriment of her successors in title.  (p. 77).

3.  LIFE ESTATE—*Release by Life Tenant.*

    The release by the widow of a lien securing the principal and interest of notes forming part of such bequest is ineffectual as a discharge of the security, the remaindermen not assenting to such release.  (p. 77).

4.  SALES—*Bona Fide Purchasers—Constructive Notice.*

    Whatever is sufficient to direct the attention of a purchaser to prior rights and equities of third persons, so as to put him on inquiry to ascertain their nature will operate as notice to him.  (p. 78).

Appeal from Circuit Court, Cabell County.

Suit in equity by Albert Diehl against the Middle States

Loan, Building & Construction Company.  From a decree for plaintiff, defendant appeals.                    *Affirmed.*

*Wyatt & Graham,* for appellant.

*Campbell, Brown & Davis and Switzer & Wiatt,* for appellee.

LYNCH, JUDGE: .

Dying testate in 1893, Louis Diehl by will gave his wife Rosa the rents, issues and profits of all his property of which he died seized and possessed, "to have, hold and enjoy during her natural life," and to his six children "the reversion or remainder" of all his estate.

At his death, he held and owned six notes, executed to him by his son Robert, aggregating $2600.  To secure their payment Robert Diehl and wife, at the instance of the plaintiff, Alfred Diehl, and his co-legatee, in 1894 and 1895 gave three successive trust liens on lots owned by Robert.  Each of these trusts describes the notes, and recites that *"said notes are now owned and held by one Rosa Diehl, devisee of Louis Diehl, deceased."* They provide that, in case of default in payment of the notes, the trustee shall, "at the request of said Rosa Diehl, devisee as aforesaid, *or the holder thereof,"* sell the property conveyed, on notice prescribed by law.  But they do not explicitly indicate the person to whom payment may be made.

By releases duly signed and acknowledged by her and recorded in the proper office, Rosa Diehl undertook to release unconditionally each of these trust liens, except the one dated November 22, 1895, hereafter referred to.

By deed of February 17, 1896, Robert Diehl and his wife conveyed to S. C. Humphreys parts of the lots subject to the trust liens for $20,000, "to be paid as provided for in a deed of trust of even date herewith executed by the said S. C. Humphreys upon the property hereby conveyed to secure the payment of the unpaid purchase money."  The record does not show any such trust.  It does, however, show one executed by Humphreys, July 14, 1896, to secure the appellant, the Middle States Loan, Building & Construction Company the repayment of a loan of $6500 upon conditions usual in such trusts.  It provides that upon default in payment of the loan Williams and

Scott, the trustees therein named, should sell the lots subject to the lien.  Humphreys did default, and thereupon the trustees sold the lots to the beneficiary, and by deed of December 8, 1897, conveyed the same pursuant to the sale.

By an order of the circuit court of Cabell county entered March 16, 1898, upon due notice, Rufus Switzer was substituted in the room and stead of Frank Diehl as trustee in the first and second deeds of trust heretofore mentioned as securing the Diehl notes, said Switzer also being the trustee named in the third of said deeds of trust.  Subsequently, Switzer as trustee sold parts of the lots so conveyed to Albert Diehl, executor and conveyed such parts to him accordingly by deed of May 28, 1898.  The trustee declined to sell the remainder of the property so encumbered, because involved in the Humphreys trust.

Albert Diehl, in his own right and as executor, instituted this suit, in the life-time of his mother, against her, his co-legatees, and the appellant, to cancel the releases by Rosa Diehl, the deed from Robert to Humphreys, the deed of trust by Humphreys to appellant, and the conveyance by the trustee to appellant, as clouds upon the title to the lots subject to the trusts securing the notes, and to enforce payment of the notes by a sale of the trust subject.  The circuit court by its decree granted plaintiff the relief sought.  This appeal followed.

Appellant demurred to the bill, assigning several grounds in support of its demurrer.  The court overruled the demurrer, at which time the appellant filed its answer.  The court did not err in its ruling upon the demurrer, except as to the absence of Humphreys as a party defendant.  However, subsequent to the court's ruling upon the demurrer Humphreys was made a party defendant, appearing by attorney and waiving process.  The plaintiff has right and title as devisee and as executor to maintain the suit, and did not prematurely institute it.  If the sole object of the bill were to remove a cloud on title, the third ground assigned upon demurrer would, under the decisions of this Court, demand serious consideration.  But its purpose is not so limited.  As stated, it seeks not only cancellation, but the enforcement of the trust liens by sale and the application of the

proceeds to the payment of the notes secured. Cancellation is but an incident to other relief sought, to obtain which the bill is maintainable.

By its answer, appellant relies upon various grounds of defense. It asserts that it became a purchaser for value without notice; that Rosa Diehl had authority to execute the releases; that the legatees under the will assisted in procuring the releases of the liens securing the Diehl notes; that a deed of trust by Robert Diehl to the Iron Belt Building & Loan Association was executed and recorded prior to the trusts upon which plaintiff relies, that the money advanced by it to Humphreys was applied to the payment of such prior lien, and that thus it became entitled to subrogation to the rights of the beneficiary thereunder. These are material defenses, if established.

Was the appellant a purchaser for value without notice? It is not necessary to determine whether by its answer the appellant has sufficiently pleaded this defense. In fact, it may be safely asserted that it has not. But ignoring this defect, it can not with propriety be said that appellant is a purchaser without notice. It is a purchaser for value. But apparently the records necessary for it to examine disclose information sufficient to warrant abundant notice of infirmity in the attempt to discharge the liens created by the Robert Diehl trusts. As noted, these trust deeds secured the payment of the notes in general terms. They do not specify any particular person secured. True, they recite that the notes are "held and owned by Rosa Diehl, devisee of Louis Diehl, deceased", and authorize a sale of the trust subject upon her request. But the will under which she held and claimed, was likewise of record in the same office. Whether in the same office or elsewhere, the language of the trust reasonably suggested further inquiry as to the source of her authority to execute the releases, unless they were procured, as the answer asserts, by the joint action of the legatees under the will, of which there is no proof. The deeds of trust, read with the will, indicate with sufficient precision to a cautious conveyancer that the authority of Rosa Diehl to execute the releases was at least doubtful. She had the usufruct of the notes during life only, the reversion and remainder being in her children as

legatees under the will.   Of course, she could hold possession of the notes, receive payment of the sum due on any one or more of them, and reinvest the proceeds.   She could exercise the control ordinarily appertaining to ownership of personal property.   But she could do no act the resultant effect of which would be the impairment or diminution of the corpus of the estate, except perhaps that which even by prudent management results from the frailty of human judgment.   Her interest was limited to the income derivable from the notes.   But, by her releases, she discharged, or at least attempted to discharge, the security given for their payment.

There is authority holding that the unqualified grant of the rents, issues and profits of any species of property is in effect the grant of the corpus of the property.   40 Cyc. 1487.   But the bequest here is in express terms limited to the life of the widow, with reversion and remainder to the children of the testator.   "If it is the manifest intent of a testator to sever the product from its source, as where only a life estate in the income is given, a bequest of income will not carry an absolute estate in the principal."   40 Cyc. 1550; *Roush* v. *Hyre,* 62 W. Va. 128.

With this knowledge or source of knowledge easily available, the defendant can not in reason be deemed a purchaser for value without notice.   "Where a subsequent purchaser has actual notice that the property in question was encumbered or affected, he is charged constructively with notice of all the facts and instruments to the knowledge of which he would have been led by an inquiry into the encumbrance or other circumstance affecting the property of which he had notice."   *Insurance Co.* v. *Railroad Co.,* 32 W. Va. 244; *Lenhart* v. *Zentz,* 50 W. Va. 86; *Clark* v. *Sayers,* 55 W. Va. 512; *Tanning Co.* v. *Boom Co.,* 63 W. Va. 685; *Coles* v. *Withers,* 33 Grat. 186.   In *Clark* v. *Sayers, supra,* it is said:   "Whatever puts a man on inquiry amounts, in judgment of law, to notice, provided inquiry becomes a duty, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding."   "Notice is any knowledge, however acquired, which is sufficient to put a party on inquiry, for the law imputes a personal knowledge of the fact of which the exercise of common

prudence and ordinary diligence would have apprised him." *Cain* v. *Fox,* 23 W. Va. 594, 609; *Fouse* v. *Gilfillan,* 45 W. Va. 213. "Whatever is sufficient to direct the attention of a purchaser to prior rights and equities of third persons, so as to put him on inquiry to ascertain their nature, will operate as notice." *Tanning Co.* v. *Boom Co., supra.* In the same case it is held that one acquiring, by deed without reservation, parts of property reserved in a former conveyance, "is chargeable with notice of the rights of another whom by common prudence he would have found to be the owner under such former deed" and that he is therefore not an innocent purchaser of an outstanding interest in another by such former conveyance.

Besides, the language of the last release, of the Robert Diehl trust dated November 22, 1895, is itself sufficient to put appellant upon inquiry as to the rights of others. The intention expressly declared in this release is to give to appellant a lien "prior to and superior to the lien of the said *Rosa Diehl*" under the trust mentioned, *"but as to all other lots and all other persons to leave the lien of my said deed of trust unaffected and unimpaired."*

There is no proof sustaining the averment in the answer that the legatees under the will procured the releases, nor of any trust by Robert Diehl to the Iron Belt Building & Loan Association, nor that the money advanced by appellant under its trust from Humphreys was to any extent applied to payment of any such prior lien. Therefore, whatever the fact, relief based on these grounds must be denied.

Robert Diehl does not appeal; and the decree, denying him relief from the releases, is final.

For reasons stated, the decree of the circuit court is affirmed.

*Affirmed.*

WILLIAMS, JUDGE, *(dissenting):*

The deed of trust was given after the death of testator to secure notes made by Robert Diehl payable to his father. The will gave Rosa Diehl a life estate in them; and the trust deed does not disclose that any other person is a beneficiary. Having a life estate in the notes, she had a right to take security for their payment, or to collect them, and re-invest the fund. The

deed of trust disclosing no other *cestui que trust* than Rosa Diehl, the purchaser of the lots was not required to look beyond it to ascertain if she had power to release it. She was *sui juris.*

"Where there is a life-estate in personal property there must always be a power to make it available according to the circumstances, and the life-tenant may convert one kind of property into another or change the character of the investments, provided such acts are in accordance with prudent management and the value of the property as a whole is not diminished." 16 Cyc. 619. *Warren* v. *Webb,* 68 Me. 133; *Sulphen* v. *Ellis,* 35 Mich. 446.

Having a life estate in the notes, Rosa Diehl had a right to demand security for their payment, and having taken such security, ostensibly for her benefit, she had the power also to release it.

It does not appear that the maker of the notes was not as able to pay them immediately after the release, as he was before the trust deed was executed. There is then no evidence that the releasing of the trust deed put plaintiffs in any worse situation than they were when their estate in the notes vested. She was not acting as their guardian.

It is not alleged that the release was procured by fraud. The only question presented by the pleadings, is the authority of Rosa Diehl to execute the release; and even if the fact were established, that the trust deed had been procured by the plaintiffs, and was intended for their benefit as well as for Rosa Diehl, the trust deed does not disclose it; she is the only beneficiary mentioned in it, and, therefore, the proper person to release it. There is no allegation of *mala fides* on her part.

The averment of the bill, that plaintiffs procured Robert Diehl to execute the trust deed for their protection, is denied by the answer; and no proof was taken. The case was submitted on record evidence only, and it does not sustain that averment. Plaintiffs' case must stand or fall, according to the effect to be given to the several recorded papers, viz.: the deed of trust, the release and the will of Louis Diehl. Rosa Diehl, the only *cestui que trust* disclosed by the trust deed, certainly could execute a valid release of it, and, I think, did so. I would reverse the decree. In this view Judge POFFENBARGER concurs.