In the Matter of the ESTATE OF Ruth Evelyn SMITH, a/k/a Ruth E. Smith, a/k/a Ruth E. Lytle Smith, Deceased; Barbara Merle Starr West, a/k/a Barbara M. West, Appellant,

v.

Charlene WILLIAMS and Phyllis Bushnell, Appellees.

No. 56640.

Supreme Court of Oklahoma.

Dec. 20, 1983.

Lamb, Maxwell, Long & Ford by Norman A. Lamb, Enid, for appellant.

Mitchell, DeClerck, Halstead, Lahman & Shaw, P.C. by Larry D. Lahman, Enid, for appellees.

LAVENDER, Justice:

Appeal from order of distribution entered by the District Court of Garfield County, Oklahoma, Honorable Park W. Lamerton, Trial Judge, insofar as the order relates to the distribution of certain real estate mentioned in the will of testatrix Ruth Evelyn Smith, deceased.

On October 7, 1977, Ruth Evelyn Smith (Ruth), who was then married to Lester H. Smith (Lester), executed her will, paragraphs 6 and 7 which provide:

6.

"I give all my interest in and to the following described property:

Lot One (1), Block Ten (10), Prairie Ridge Addition to the City of Enid, Oklahoma,

as follows: Barbara M. West, one-third; Charlene S. Williams, one-third; and Phyllis S. Bushnell, one-third.

7.

All the rest and residue of my property of whatsoever kind and wheresoever situated I give to my daughter, Barbara M. West."

On October 9, 1979, the District Court of Garfield County, Oklahoma, granted both Ruth and Lester a divorce, each from the other, and directed the real estate described in the will sold and the proceeds equally divided, as a part of the divorce decree.

On November 29, 1979, before any contract to sell the property was entered into, Ruth died. Thereafter, a contract for the sale of the property was entered into and carried out through power of sale contained in Ruth's will. Upon completion of the sale, but before the sale was confirmed in the probate proceedings, one-half of the sale proceeds was paid to Ruth's estate pursuant to the divorce decree. It is Ruth's estate's share of the sale proceeds which is the subject of this controversy.

The court in its Decree of Settlement of Final Account and Determination of Heirship and Distribution of Ruth's estate ordered that the estate's share of the sale proceeds from the sale be distributed under paragraph 6 of the will to Barbara M. West, Charlene S. Williams and Phyllis S. Bushnell. Barbara M. West appeals.

The sole issue on appeal is whether under the above facts and circumstances the doctrine of equitable conversion impels the treatment of the sale proceeds as personal property upon distribution under the will resulting in distribution under paragraph 7, the residuary clause of the will.

■ In Oklahoma the cardinal rule for the construction of wills is to ascertain the intent of the testator and give effect thereto, unless such intent attempts to effect that which the law forbids.[1] Title 84 O.S. 1981 § 151 provides: "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible."

In *Hein v. Hein*,[2] we said (319):

"A will is ambulatory during the maker's life and speaks only from and after death of the testator. *In re Daniels' Estate,* Okl., 401 P.2d 493. The cardinal principle governing construction of wills is to ascertain and give effect to the testator's intention. Thus the nature, character and extent of the estates devised are determined upon the basis of the testator's intention as ascertained from the instrument itself. *Franklin v. Margay Oil Corp.,* 194 Okl. 519, 153 P.2d 486. In resolving *any ambiguity or uncertainty* as to the testator's intention consideration may be given to surrounding circumstances. *Noble v. Noble,* 205 Okl. 91, 235 P.2d 670, 26 ALR2d 1200." (Emphasis supplied.)

Title 84 O.S.1981 § 152 provides:

"*In case of uncertainty, arising upon the face of a will* as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." (Emphasis supplied.)

■ Actions involving will contests are of equitable cognizance, and on appeal the Supreme Court will examine the whole record and weigh the evidence, but the findings and judgment of the trial court will not be reversed unless clearly against the weight of the evidence.[3]

In the construction of a will, technical words are to be taken in their technical sense unless the context clearly indicates a contrary intention,[4] but technical words are not necessary to give effect to any species of disposition by a will.[5] Nontechnical words are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense can be collect-

---

1. *Matter of Estate of Boviard,* Okl., 645 P.2d 500 (1982).

2. Okl., 431 P.2d 316 (1967).

3. *Matter of Estate of Bogan,* Okl., 541 P.2d 854 (1975).

4. 84 O.S.1981 § 161.

5. 84 O.S.1981 § 162.

ed, and the other sense can be ascertained,[6] with the view of effecting the true intent of the testator.[7]

■ Upon applying the foregoing principles to the case before us, if the intention of the testatrix is ascertainable within the provisions of paragraph 6 of her will, no resort to paragraph 7, the residuary clause, can be made.

■ Paragraph 6 provides: "I give all my interest in and to the following (described real property) as follows: Barbara M. West, one-third; Charlene S. Williams, one-third; and Phyllis S. Bushnell, one-third." It was her "interest" (a nontechnical word) in the real estate which was devised.

The first definition given in Black's Law Dictionary, 5th Ed., of the word "interest" is: "The most general term that can be employed to denote a right, claim, title, or legal share in something." At the time of the making of her will, Ruth's "interest" in the land was that of a joint tenant. At the time of her death, Ruth's "interest" by reason of the terms and implementation of the divorce decree was in the proceeds from the land's sale. There being no clear manifestation of an intention that the word "interest" was not otherwise used, we construe the word in the ordinary grammatical sense and hold that it was Ruth's intent, as expressed in her will, that her interest in the land was unchanged by reason of the land's sale ordered prior to her demise. The findings and judgment of the trial court are not against the clear weight of the evidence.[8]

■ Appellant urges that the doctrine of equitable conversion mandates a different result. We find this contention to be without merit.

Equitable conversion is defined in 27 Am. Jur.2d Equitable Conversion § 1 as follows:

"Equitable conversion is that constructive alteration in the nature or character of property whereby, in equity, real estate is for certain purposes considered as personalty, or whereby personalty, for similar considerations, is regarded as real estate, and in either instance, it is deemed to be transmissible and descendible in its converted form."

The doctrine is statutorily recognized in 84 O.S.1981 § 172 in the following language:

"*When a will directs* the conversion of real property into money, such property and all its proceeds must be deemed personal property, from the time of the testator's death." (Emphasis supplied.)

Here the will does not direct the conversion of real property into money. Therefore, application of the doctrine in the case before us must find its authority in case law.

The doctrine of equitable conversion is not an immutable rule of law. It is a doctrine in equity to be applied in furtherance of the testator's intent as expressed in the will, and not to frustrate the testator's intention.

In 144 A.L.R., pp. 1238, 1239 the textwriter summarizes the application of the doctrine with reference to the testator's expressed intent as follows:

"As a general guide, it has often been stated that equity will never presume a conversion unless it is demanded to accomplish the lawful purposes expressed in the will by the testator, and that only to this extent will a conversion be recognized in equity. In the absence of a manifestation of a contrary intention on the part of the testator, the conversion takes place solely for the purpose of carrying out the testamentary scheme, and with respect to matters in which the scheme fails, the conversion fails. Since the sole purpose of the doctrine of equitable conversion in the case of a will is to effectuate the intention of the testator, if

6. 84 O.S.1981 § 158.

7. *Gormly v. Edwards*, 195 Okl. 123, 155 P.2d 985 (1945).

8. We do not deem the question of whether title to the land passed prior to testatrix's demise by

reason of the fact that the sale had not then been confirmed to be of significance since that question does not change the intent of testatrix as expressed in her will.

this reason of the rule ceases the rule itself no longer obtains." [9]

27 Am.Jur.2d Equitable Conversion § 5 states:

"The law does not favor equitable conversion of property, however. Few testators have any knowledge of the doctrine, it is said, or any actual intent to change the nature of the property, except when and to the extent that may be required to carry out the special purpose of the will. The presumption, therefore, no matter what the form of words used, is against conversion under a will. Where there is a doubt as to the intention of the testator, in a direction for the conversion of land into money, the original character of the property will not be changed. Nor will the intention to convert be implied from the mere fact that a conversion would be the more convenient method of making a division of the property. . . ."

Here the testatrix clearly expressed her intent that her interest in the land, whatever that interest might be, be devised to the three persons named in paragraph 6 of her will in equal shares. The sale of the devised property under mandate of the court under the divorce decree was involuntary on her part and occurred after she had made her will. It strains credulity to suppose that her intent clearly expressed in her will was in any way altered by the thereafter sale of the land under involuntary divorce decree, or, indeed, that she was aware of the doctrine of equitable conversion at all. The judgment of the trial court is reinstated and affirmed.

BARNES, C.J., and HODGES, HARGRAVE and OPALA, JJ., concur.

SIMMS, V.C.J., concurs in result.

WILSON, J., dissents.

9. Accord, 27 Am.Jur.2d Equitable Conversion § 6.