In the Matter of the ESTATE OF Arlie Cecil HIXON, Deceased.

Wilma HIXON, Appellant,

v.

Lymon Leroy HIXON, Naomi Alene Hixon Stinson, Steven Stinson, Remaindermen Devisees Under the Last Will and Testament of Arlie Cecil Hixon, Deceased, and The Honorable Robert C. Lovell, Associate District Judge of the District Court of Kingfisher County, Oklahoma, Appellees.

No. 58236.

Supreme Court of Oklahoma.

Feb. 26, 1985.

Rehearing Denied April 2, 1986.

Thomas E. Baker, Baker, Logsdon & Phelps, Kingfisher, for appellant.

Vincent Mesis, Jr., Collier, Mesis & Collier, Hennessey, for appellees.

ALMA WILSON, Justice.

Arlie Cecil Hixon died testate on May 13, 1980. The decedent left surviving him a widow, Wilma Hixon, and two children, Lyman Leroy Hixon and Alene Hixon Stinson, both of a prior marriage. By his Last Will and Testament, dated December 10, 1979, the decedent devised to his wife of 42 years a life estate in two farms, with a remainder interest to the surviving children:

"I hereby give, devise and bequeath to my wife, Wilma Hixon, *for and during her lifetime,* she to have and enjoy *all* of the income and *benefits of whatsoever kind, nature and source during her*

*lifetime,* from the following described real estate: ....

After the death of my wife, Wilma Hixon, I hereby give, devise and bequeath to my son, Lyman Leroy Hixon, as follows: ....

After the death of my wife, Wilma Hixon, I hereby give, devise and bequeath to my daughter, Naomi Alene Hixon Stinson, as follows: ...." [Emphasis added.]

Both farms were under a lease with producing oil and gas wells at the time of the testator's death. All remaining assets of the testator were left to the surviving widow outright in the residuary clause of the will.

In probating the estate, the trial court held (1) the proceeds of oil royalties should be apportioned as principal and income between the life tenant, Wilma Hixon, and the remaindermen, Lyman and Naomi, pursuant to the Uniform Principal and Income Act, 60 O.S. 1981 § 175.26 *et seq.;* (2) the surviving spouse should bear the entire tax burden of the estate taxes which should be paid from the residuary assets and from income accruing to the estate during pendency of probate.

The widow appealed and the Court of Appeals, Temporary Division No. 217, affirmed in part and reversed in part. The Temporary Court of Appeals affirmed the trial court's apportioning the oil royalties between the life tenant and remainderman, but reversed the trial court's imposition of the entire estate tax burden on the Widow. Both parties petitioned for review by certiorari. The widow contends under the express provisions of her late husband's will she is entitled during her lifetime to *all income and benefits* of whatsoever kind, nature and source derived from the described real estate, *including oil royalties.* The remaindermen contend they should not bear any federal estate tax burden. We grant both petitions for certiorari and vacate the opinion of the Temporary Court of Appeals.

**I**

In affirming the trial court's application of the Uniform Principal and Income Act, 60 O.S. 1981 § 175.26 *et seq.*, in the present case, the Temporary Court of Appeals expressed its opinion that by its enactment the Act was made applicable to all tenant and remaindermen situations. As authority for its position, the Temporary Court of Appeals relied upon § 175.26 of the Act, which states:

"This act shall govern the ascertainment of income and principal and the apportionment of receipts and expenses between tenants and remaindermen, *in all cases where a principal has been established* with or unless otherwise stated hereafter without the interposition of a trust; *except that in the establishment of the principal provision may be made touching all matters covered by this Act,* and the person establishing the principal may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee or other person to do so, *and such provision and direction, where not otherwise contrary to law, shall control notwithstanding this Act.* [Emphasis ours.]

The Temporary Court of Appeals concluded that it cannot be said that the words of the testator were in derogation of the statutory requirement of the Act, thus it reasoned the trial court did not err in applying the apportionment provisions of the Act in the present situation. We cannot agree. In the present case, the expressed intention of the testator excludes the application of the Act. Section 175.33 of the Act specifically provides:

Where any part of the principal consists of any interest in lands, including royalties, ..., *and no provision is made for the disposition of the net proceeds thereof,* after the payment of expenses and carrying charges on such property, such proceeds, if received as extension payments on a lease or bonus for the execution of the same, shall be deemed income, but if received as consideration whether as royalties or otherwise, for the permanent severance of such natural resources from the lands, shall be apportioned to principal and income as follows: .... [Emphasis added.]

Thus, where the testator makes a provision in the will directing the disposition of any interest in lands, the testamentary disposition excludes the application of the statute. Such a disposition was made by the following express language of the will:

"I hereby give, devise and bequeath to my wife, Wilma Hixon, for and during her lifetime, she to have and enjoy *all of the income and benefits of whatsoever kind, nature and source,* during her lifetime from the following described real estate: .... [Emphasis added.]

This Court has consistently held the cardinal rule of interpretation of wills is to give effect to the testator's intent at the time he executed the will.[1] The intent of the testator must be ascertained from the language employed in the will, except where language is ambiguous and uncertain and fails to show clearly the intent of the testator.[2] Moreover, the words of a will must be given their fair and ordinary meaning with a view to effecting the true intent of the testator;[3] and the words of a

1. Title 84 O.S. 1981 § 151 provides: "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible." *See also, Estate of Smith v. Williams,* 674 P.2d 17 (Okl.1983); *Matter of Bovaird's Estate,* 645 P.2d 500 (Okl.1982); *Miller v. First Nat'l Bank & Trust Co.,* 637 P.2d 75 (Okl. 1981).

2. Title 84 O.S. 1981 § 152 provides: "In case of uncertainty, arising upon the face of a will, as to

the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." *See also, Noble v. Noble,* 205 Okl. 91, 235 P.2d 670 (1951).

3. Title 84 O.S. 1981 § 158 provides: "The words of a will are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense can be collected, and

will must be given an interpretation which will give to every expression some effect, rather than render any of the expressions inoperative.[4]

■ In the present case, the testator by will gave to his wife for and during her life, all of his real property to have and to enjoy all of the income and benefits of whatsoever kind, nature and source, and after her decease said estate and remainder thereof to his children. The intention of the testator, as expressed by the language of the instrument, is the criterion for the interpretation of the devise. It is clear from that language that the word "benefits" is not in this instance synonymous with the singular "income"; but is used in its ordinary and common sense, without special or technical signification. In the absence of expressed qualification, the word "benefits" is of broad meaning and wide significance. Its manifest meaning is that which works to the advantage or gain of the recipient.[5] It has thus been defined: Advantage; gain; profit.[6] Accordingly, the devisee's right to have and enjoy all of the benefits out of the estate embrace her unqualified right to employ it for her advantage, gain and profit for and during her life. Her right to all benefits out of the estate was superadded to her right to income; otherwise the term is rendered meaningless. Consequently, under the provisions of the will, the widow is entitled to such power and control over the estate devised to her as to effectuate the testator's clearly expressed intent, not only to secure to her "income", but also to facili-

tate her enjoyment of "all benefits" therefrom. Here, the wholly unqualified term "benefits" inescapably confers general and specific benefits alike, and does not admit to a limited signification.

■ Having determined the testator intended and did effectively provide for a devise to his widow all income and benefits out of the estate for and during her life, the testorial intention will control, we find no room for construction of the will. The will must therefore be executed accordingly, unless the law will not permit the testator's intent to be accomplished.[7] We find the meaning drawn from the language of the will not in conflict with any rule of law. In accordance with Section 175.26, *supra,* the testator has made provision touching all matters covered by the Uniform Principal and Income Act, and such provision and direction shall control notwithstanding the Act. The legitimate function of the Act takes hold only where such provision has not been made, and cannot otherwise control or vary expressed testamentary disposition, or prevent its execution. We reverse the Temporary Court of Appeals' affirmance of the application of the Uniform Principal and Income Act as contrary to the express provisions of the will.

## II

We now consider the propriety of the imposition of the entire burden of federal and estate taxes on the surviving widow. The Temporary Court of Appeals held the imposition in derogation of the doctrine of

that other can be ascertained." *See also, Gormly v. Edwards,* 195 Okl. 123, 155 P.2d 985 (1945).

4. Title 84 O.S. 1981 § 159 provides: "The words of a will are to receive an interpretation which will give to every expression some effect rather than one which shall render any of the expressions inoperative." *See also, Matter of Scott's Estate,* 604 P.2d 846 (Okl.1979).

5. *Winthrop County v. Clinton,* 196 Pa. 472, 46 A. 435, 437 (1900). *See also,* Restatement of Restitution § 1–b (1936), which broadly defines "benefit" as *any* form of advantage.

6. *See, e.g., In re Emmons' Will,* 165 Misc. 192, 300 N.Y.S. 580, 584, 585 (1937); *In re Krause's Estate,* 173 Wash. 1, 21 P.2d 268, 270 (1933);

*Stowell v. Hastings,* 59 Vt. 494, 8 A. 738, 739 (1887); *Warren v. Webb,* 68 Me. 133, 134 (1878). *Also see,* Central Oklahoma Master Conservatory District, 359 P.2d 725 (1961), where "benefit" is used in the sense of an advantage gained without a corresponding obligation. *See further, Harness v. McKee-Brown Lumber Co.,* 17 Okl. 624, 89 P. 1020 (1907), where benefit is used to denote acquisition of some legal right to which recipient would not have otherwise been entitled.

7. *Noble v. Noble,* 205 Okl. 91, 235 P.2d 670 (1951).

equitable apportionment of estate tax liability. We affirm.

■■■ The ultimate burden of estate taxes, both state and federal, is determined by state law.[8] Historically, this jurisdiction has declined to implement the doctrine of equitable apportionment of estate tax liability. Simply stated this doctrine places the estate tax burden proportionately upon the property which generates the tax. In this regard, Oklahoma law was first interpreted in the case of *Thompson v. Wiseman*, 233 F.2d 734 (10th Cir.1956). In *Thompson*, estate taxes were found to be an *expense of administration* pursuant to 84 O.S. 1981 § 3, which reads as follows:

> The property of a testator, except as otherwise expressly provided in this code and in the chapter on civil procedure must be resorted to for the payment of debts in the following order:
>
> 1. The property which is expressly appropriated by the will for the payment of debts.
>
> 2. Property not disposed of by the will.
>
> 3. Property which is devised or bequeathed to a residuary legatee.
>
> 4. Property which is not specifically devised or bequeathed, and,
>
> 5. All other property ratably. Before any debts are paid, the expenses of the administration and the allowance to the family must be paid or provided for.

Since the will in *Thompson* did not direct which property would bear the estate tax burden, under subsection 3 of the statute, the estate tax fell on the residue, causing the wife's one-third share to bear its proportionate share of tax, despite the fact that her share qualified for a marital deduction and was not taxable.

*Thompson* was quoted with approval in *In re Estate of Rettenmeyer*, 345 P.2d 872 (Okl.1959). *Rettenmeyer* affirmed the trial court's determination that a spouse's *bequest* from the *residue* should share the tax burden equally with other shares of the residue. The following year in *Tapp v.*

*Mitchell*, 352 P.2d 900 (Okl.1960), an attempt to charge nonprobate property with its proportionate share of estate tax was overruled. We stated that "the entire estate tax burden, whether occasioned by property within or dehors probate, falls upon the estate." Consequently, *Rettenmeyer* was recognized as an express rejection of the equitable doctrine of estate tax apportionment. Subsequently, *Rettenmeyer* was reaffirmed in *Fullerton's Estate*, 375 P.2d 933 (Okl.1962). Absent direction in the will, estate taxes were declared payable out of the residue of the probate estate.

Then, in 1965 the Oklahoma Legislature passed the Uniform Estate Tax Apportionment Act, requiring complete apportionment. The Act effectively reversed *Rettenmeyer*, but was repealed in 1969. Repeal of the Act thus reestablished the rule of *Rettenmeyer* and *Tapp*. In *Estate of Murray*, 579 P.2d 203 (Okl.App.1977), the Court of Appeals, relying on *Tapp*, held that all "debts, estate taxes and costs of administration" must be allocated in accordance with 84 O.S. 1981 § 3, *supra*.

■■■ Not until the case of *In re Davidson*, 641 P.2d 1110 (Okl.1982), did the doctrine of equitable apportionment gain judicial recognition. In *Davidson*, gifts were made to a tax exempt charitable beneficiary. The plaintiff bank brought a declaratory judgment action requesting directions as to how it should proceed with respect to payment of estate taxes. The trial court ruled that since charitable beneficiaries qualified for a tax deduction and did not contribute to the estate tax burden, they were exempt from liability for payment of any estate taxes. On appeal to this Court, the bank contended that estate taxes should be paid out of the residue of the estate, pursuant to 84 O.S. 1981 § 3, *supra*. We found it unnecessary to respond to the contention that estate taxes shall be paid out of the residue of the estate as 84 O.S. 1981 § 3 had been supplemented by 68 O.S. 1981 § 825, as follows:

---

**8.** *Riggs v. Del Drago,* 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942).

"Unless the will otherwise provides, the tax shall be apportioned among lineal and collateral persons.

The tax on interests passing to collateral persons shall be apportioned in the proportion that the value of interest received by each collateral person bears to the total of the interests passing to all collateral persons.

The tax on interests passing to lineal persons shall be apportioned in the proportion that the value of interest received by each lineal person bears to the total of all interests passing to lineal persons."

We therefore affirmed the trial court's ruling. In doing so, we emphasized that absent statutory direction or an expression of intent on the part of the testator to the contrary, broad equitable principles place the burden of federal estate tax on the property which generates the tax, and exonerates therefrom property which does not. We accordingly advanced an equitable method of apportionment:

"We feel a more equitable calculation, in keeping with the statutory mandates, would be simply to determine each beneficiary's proportionate share of the taxable estate, then multiply that percentage times the total estate tax due to arrive at each beneficiary's share of those taxes ... The same method shall be utilized in determining proportionate share of the estate tax due the State of Oklahoma. We decide *not* what the amount of the tax or rate of tax is to be, for that is a function of the Tax Commission. Our opinion is to how such tax shall be apportioned among beneficiaries."

Subsequent to *Davidson*, we reaffirmed the doctrine of equitable apportionment in *In re Estate of Bovaird*, 645 P.2d 500 (Okl.1982). After reviewing a number of cases concerning the tax liability of a widow who elects against a will, we concluded:

"We agree with the 'logic, justice and equity' of the above cases and hold that to the extent a spouse's property qualifies as a marital deduction, she will not

be required to contribute to the federal estate tax."

The appellees in the present case urge a narrow interpretation of our decision in *Bovaird*, distinguishing it factually. However, the narrowest possible interpretation of the decision implies that a bequest out of the residue to a spouse would not be free of contribution to federal estate taxes, while a widow's forced share would be free of contribution. The effect of this interpretation would be to free a widow whose husband attempted to cut her out of the will of federal estate tax liability while burdening a widow whose husband makes an adequate bequest of the residue or dies intestate. In all these situations the marital share qualifies for the marital deduction and creates no tax liability. No equitable reason justifies favoring a forced share over a bequest or an intestate share.

█ *Bovaird* holds to the proposition that "broad equitable principles place the burden of federal estate tax on the property which generates the tax, and exonerates therefrom property which does not." Moreover, this Court explicitly overruled the portions of *Rettenmeyer* that conflict with *Bovaird*. Thus the appellees are incorrect in asserting the rule, as set down in *Rettenmeyer*, that a spouse's bequest from the residue should share the tax burden equally with other shares of the residue. That rule as modified by *Davidson* and *Bovaird* is that *to the extent a spouse's property qualifies as a marital deduction, she will not be required to contribute to the federal estate tax.*

█ It is therefore the opinion of this Court that the Temporary Court of Appeals correctly reversed the trial court's imposition of the entire burden of federal and estate taxes against the surviving widow, in derogation of the apportionment doctrine which has been adopted by this Court as the law in Oklahoma.

The opinion of the Temporary Court of Appeals is hereby affirmed in part and reversed in part and vacated. Further, inasmuch as the tax returns referred to by

the parties were not made a part of the record on appeal, and there is no other evidence of record pertaining to which property generated the estate taxes, we remand this cause to the trial court for determination consistent with this opinion.

DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE and KAUGER, JJ., concur.

OPALA, J., concurs in judgment in Part I, and concurs in Part II.

SIMMS, C.J., concurs in part, dissents in part.

SUMMERS, J., dissents from Part I, concurs in Part II.