2011 OK CIV APP 2

In the Matter of the ESTATE OF Dicky J. HODGES, a/k/a Dicky Jean Hodges, Deceased,

Barbara Shultz, Appellant,

v.

Charles Summers, Personal Representative of the Estate of Dicky J. Hodges a/k/a Dicky Jean Hodges, Deceased, and Larry Don Taylor,

and

John Board, Guardian Ad Litem for Cleo Brooke Taylor, Appellees.

No. 107,186.

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 28, 2010.

Daniel Johnson, Crowe & Dunlevy, Oklahoma City, OK, and Cory Hicks, Field & Hicks, PLLC, Guymon, OK, for Appellant.

David K. Petty, Guymon, OK, for Appellees, Charles Summers and Larry Don Taylor.

John Board, Guymon, OK, for Appellee, Cleo Brooke Taylor.

BAY MITCHELL, Judge.

¶1 Barbara Shultz (Shultz), Appellant is the sister and sole heir-at-law of the deceased Dicky J. Hodges (Hodges). Hodges died testate on January 17, 2006, and his holographic will was admitted to probate on January 24, 2006.[1] Schultz contends the trial court's interpretation of Hodges' Will and distribution of Hodges' Estate was contrary to Oklahoma law and the express provisions of the Will.

¶2 At the time of his death, Hodges was the sole owner of a corporation, Turkey Track Farms, Inc. (TTFI)[2], the disposition of which is at the heart of Shultz's appeal. It is undisputed Shultz is Hodges' sole heir-at-law. Hodges devised his Estate, including property owned by TTFI, to Appellee Larry Don Taylor and in trust for Appellee Cleo Brooke Taylor.[3] Specifically, paragraphs 1, 3, 4, 5 and 7 of the Will are at the center of this appeal, the relevant portions of which state:

In the event of my death I will as follows:

1. Life Ins—Travelers Motor Club, Combine Ins, AVMA, National Western, Old Surety Life OKC, OK, stock & mutual funds & cash all proceeds to go to retire debt and inheritance tax and legal fees.

3. Ranch at Felt, Okla. acquired from Ron Overstreet, Dale Montgomery and J.B. Steward (3 J Corp.) . . . all above to be put in trust for Cleo Brooke Taylor (my proclaimed Granddaughter & Daughter of Larry Don Taylor)–SSN [* * *-* *-* * * *] and turned over to her on her 21st Birthday Aug. 23, 2018). In the interim, I appoint Charles Summers (long time employee & very special friend) to act as trustee. If he cannot fulfill this time limit I will pass the trustee to Larry Don Taylor. All proceeds from this trust (less expenses and upkeep (upkeep will maintain current condition) and $2000.00 per year will be divided 50:50 between Charles Summers and Michele Kay James—all of Boise City, OK ... In the event of death of Michele Kay James before Aug. 23, 2018 her share will go to Cleo Brooke Taylor. The $2000.00 per year will be invested by trustee for the purpose of College Education for Cleo Brooke Taylor.

4. All cattle will be divided 50:50 between Cleo Brooke Taylor trust and Larry Don Taylor.

5. All machinery and equipment mostly located 23-3-4 including corrals & barns will share useage [sic] between trustee and Larry Don Taylor but belongs to trust.

7. To my Sister Barbara Shultz & nieces Kerri Kearney & Shelli Jackson I leave my love and best wishes.

Page 6 of Hodges' Will sets forth the legal descriptions for the "6141.6 acres" specifically devised as the Ranch at Felt, Oklahoma and identifies the same as "Felt Ranch known as Turkey Track Farms, Inc."

¶3 Charles Summers (Summers) Personal Representative of Hodges' Estate filed an

---

1. The validity of Hodges' holographic will is not disputed.

2. Hodges set up TTFI to separate his ranching business from his veterinary medicine practice. No stock was ever issued for TTFI and there were apparently no other owners, officers or directors.

3. Certain property was also devised to Charles Summers, the Personal Representative of Hodges' Estate, which is not at issue on appeal.

Application to Settle Debt and Petition to Sell Personal Property after it was determined the cash and accounts designated by Hodges in paragraph 1 of his Will were insufficient to retire the debts, inheritance taxes and administration costs for Hodges' Estate. Summers proposed the sale of TTFI to settle the remaining debt of Hodges' Estate. In its Order, the trial court found:

> As to the Application for Court's Interpretation of Will filed herein July 13, 2006, the Court orders and determines that the Estate of Dicky J. Hodges, deceased, owns the corporation, Turkey Track Farms, Inc., which corporation owns the property described in the Personal Representative's application. The Court orders that such complete ownership is equivalent to the ownership of all stock in the corporation and that such stock ownership is subject to liquidation as provided in paragraph "1" of the decedent's will.

The trial court further approved the debt settlement proposed by Summers and ordered TTFI be sold at public auction.[4] No objections were filed to the application or to the trial court's liquidation of TTFI. Subsequent to the sale of TTFI, Summers made application for the ultimate distribution of the remaining assets of Hodges' Estate.

¶ 4 In response to Summers' Application for Interpretation of the Will of Dicky J. Hodges and for the ultimate distribution of the estate assets, Shultz contended Hodges could not devise the corporate assets of TTFI, as such assets had to be devised or distributed by the corporation itself. Accordingly, Shultz claimed paragraphs 3, 4, and 5 of Hodges' Will specifically devising assets of TTFI were invalid. Shultz argued the remaining assets of TTFI would therefore revert to the residuary estate of Hodges. Because Hodges' Will contained no residuary clause, Shultz contended the assets of TTFI should have been distributed according to the intestacy statutes. As Hodges' sole heir-at-law, Shultz claimed she was entitled to receive the distribution of the assets of TTFI.

¶ 5 Summers and John Board (Board), Guardian Ad Litem for Cleo Brooke Taylor, argued Hodges' Will clearly provided TTFI was to be placed in trust for Cleo Brooke Taylor, thus the funds remaining after the sale of TTFI should be placed in trust for Cleo Brooke Taylor. At the hearing on the matter, Hodges' accountant testified TTFI was created for the purpose of securing certain tax benefits for Hodges. Summers and Board further asserted during Hodges' life he used, managed and treated TTFI as his sole property without consideration of its corporate status.

¶ 6 The trial court found Hodges was the sole owner of TTFI and treated the same as his sole property during his lifetime. The trial court found all Hodges' assets were properly identified and disposed of pursuant to Hodges' expressed intent leaving no property to pass into the residuary estate. The trial court found Hodges clearly intended to devise TTFI to Cleo Brooke Taylor, and although TTFI no longer existed in its original form, the devise continued to exist in the form of undistributed funds from its sale totaling approximately $950,000. The trial court further determined Hodges expressed his intent with "crystal clarity" to exclude Shultz from receiving any estate money or property by leaving his sister only his "love and best wishes."

¶ 7 Shultz filed a Motion for New Trial arguing Hodges' Will expressed no intent to transfer the "stock" of TTFI into trust for Cleo Brooke Taylor. Shultz again asserted Hodges had no power to devise property owned by TTFI. Shultz further argued the trial court improperly disregarded the corporate structure of TTFI, as no evidence to support piercing the corporate veil had been produced. The trial court denied Shultz's motion.

¶ 8 Probate proceedings are of equitable cognizance. "While the Court will examine the whole record and weigh the evidence, the trial court's findings will not be disturbed on review unless they are clearly against the weight of the evidence or some governing principle of law." *Matter of Estate of Sneed*, 1998 OK 8, ¶ 8, 953 P.2d 1111,

---

4. Order of Interpretation of Will, Order Allowing and Approving Annual Account, Order to Settle Debt, and Order to Sell Personal Property filed March 29, 2007.

1115. Oklahoma law commands: "Every person over the age of eighteen (18) years of sound mind may, by last will, dispose of all his estate, real and personal . . ." 84 O.S. 2001 § 41(A).

¶ 9 Oklahoma Statutes governing the interpretation of wills mandate: "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible." 84 O.S.2001 § 151. "The words of a will are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense can be collected, and that other can be ascertained." 84 O.S.2001 § 158. "The words of a will are to receive an interpretation which will give to every expression some effect rather than one which shall render any of the expressions inoperative." 84 O.S.2001 § 159.

■■■ ¶ 10 In determining the intent of the testator: "[T]he will is to be considered as a whole and the several provisions thereof in their relation to one another." *Kyser v. Reed,* 1966 OK 235, ¶ 11, 442 P.2d 339, 342; 84 O.S. § 155. "The intent of the testator must be ascertained from the language employed in the will, except where language is ambiguous and uncertain and fails to show clearly the intent of the testator." *Matter of Estate of Hixon,* 1985 OK 18, ¶ 5, 715 P.2d 1087, 1089–90. "It is presumed in Oklahoma, a testator intends to dispose of his entire estate and avoid intestacy in whole or in part." *Matter of Tayrien's Estate,* 1980 OK 8, ¶ 11, 609 P.2d 752, 755.

■■■ ¶ 11 On appeal, Shultz continues to claim Hodges had no authority to devise the corporate assets of TTFI, and the trial court improperly pierced the corporate veil in allowing Hodges to devise TTFI assets. Shultz contends the trial court's ultimate determination Hodges intended to convey TTFI into trust for Cleo Brooke Taylor was a "reversal" of its classification of TTFI as "stock" in accordance with paragraph 1 of the Will in its March 29, 2007 Order, and such determination was contrary to the clear language of the Will. Shultz further alleges the Will contains no indication Hodges intended to devise the corporation TTFI to Cleo Brooke Taylor.[5]

¶ 12 This Court finds the trial court's determination that Hodges, as the sole owner of TTFI, could devise TTFI as his own property is not against the clear weight of the evidence or governing principles of law.[6] Although the Will is technically imperfect, we find no error in the trial court's determination that the Will is unambiguous and clearly expresses Hodges' intent to devise the assets of TTFI to Cleo Brooke Taylor. Additionally, Hodges' Will clearly expresses his intent to exclude Shultz. Likewise, the determination that Hodges' Will left no property to pass into the residuary estate is not against the clear weight of the evidence or contrary to law. Upon due consideration, the trial court's judgment is AFFIRMED.

JOPLIN, P.J., and BELL, V.C.J., concur.

---

5. Shultz also contends for the first time on appeal if TTFI was not "stock" as described in paragraph 1 of Hodges' Will, the trial court's liquidation of TTFI was improper and against the Oklahoma Probate Code. Shultz also suggests the entire administration of Hodges' Estate should be called into question, including the preparation of estate tax returns. Shultz's allegations regarding the impropriety of the sale of TTFI cannot be raised for the first time on appeal. Shultz neither objected to the liquidation of TTFI to settle the debts of Hodges' Estate nor sought to enjoin the trial court's sale of TTFI. Additionally, Shultz admittedly failed to raise the issue in her Motion for New Trial. "As a general rule, issues not presented to the trial court will not be considered on appeal." *Pettit v. American Nat. Bank of Austin,* 1982 OK 85, ¶ 9, 649 P.2d 525, 529. "Where questions of public policy or widespread public interest are involved an appellate court may review a cause on a theory not presented in the trial tribunal." *City of Enid v. Pub. Employees Relations Bd.,* 2006 OK 16, ¶ 21, 133 P.3d 281, 289. This Court does not consider matters of the administration of a private estate to concern issues of public policy or widespread public interest; therefore, such issue will not be considered.

6. Accordingly, Shultz's arguments regarding piercing the corporate veil need not be addressed.